UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 21-cr-00178-APM |
| | : | |
| **PETER J. SCHWARTZ,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO SET BOND AND CONDITIONS OF RELEASE

The United States respectfully opposes defendant Peter Schwartz's Motion to Set Bond and Conditions of Release, filed on June 7, 2021, because there is no combination of conditions that will assure the safety of the community and the defendant's future appearance in court. Defendant Schwartz violently participated in the storming of the U.S. Capitol on January 6, 2021, where he assaulted multiple law enforcement officers by spraying them with a chemical agent believed to be pepper spray. He later bragged about how he had thrown "the first chair at the cops" and stole "duffel bags full of mace" from law enforcement to use in his attack on the Capitol. Defendant Schwartz committed these assaults while on probation in multiple other cases involving both assaultive conduct and illegal firearms possession.

As a result of his conduct on January 6, 2021, a Grand Jury charged the defendant in a fourteen-count indictment for multiple felonies, including crimes of violence. Following a hearing in the Western District of Pennsylvania, a magistrate judge ordered that Schwartz be detained pending trial. This court should reaffirm that decision and order that the defendant remain detained pending trial. Schwartz's motion fails to establish any legal or factual basis for this Court to revoke the original detention decision. Moreover, Schwartz's conduct and statements on January 6, 2021,

his repeated failure to return to court in multiple cases, his illegal conduct while on probation, and his extensive criminal history clearly demonstrate that there are no conditions of release that would reasonably assure the safety of the community or his return to court.

The government respectfully requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## Background

### The Attack on the United States Capitol on January 6, 2021

The United States Capitol, located at First Street Southeast, Washington, D.C., is secured 24 hours a day by the U.S. Capitol Police (USCP).  Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by USCP.  Only authorized individuals with appropriate identification are allowed access inside the Capitol Building.

On January 6, 2021, the exterior plaza of the Capitol was also closed to members of the public, and a joint session of the United States Congress convened inside.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020.  The joint session began at approximately 1:00 p.m.  Then-Vice President Michael Pence was present and presiding in the Senate chamber.

While the joint session was underway, a large crowd gathered outside the Capitol.  As noted above, temporary and permanent barricades were in place around the exterior of the Capitol Building, and USCP were present and attempting to keep the crowd away from the Capitol

Building and the proceedings underway inside. Officers from the Metropolitan Police Department of the District of Columbia ("MPD") also responded to assist USCP in protecting the Capitol. Between 1:00 p.m. and 2:00 p.m., while the joint session continued to work to certify the election results, individuals in the crowd forced their way through, up, and over the barricades and police officers to the exterior façade of the Building. By 2:00 p.m., the crowd forced entry into the Capitol Building, including by breaking windows and by assaulting members of both USCP and MPD, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including Vice President Pence, were instructed to – and did – evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the violent protests, many individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. Other individuals stole items from officers protecting the Capitol – including pepper spray and riot shields – and turned those items into makeshift weapons used against the officers. Over 100 law enforcement officers reported being assaulted or injured by this violent mob while attempting to protect the Capitol and the individuals inside of the building. These assaults occurred both inside the Capitol, as well as on the steps just outside the Capitol Building and throughout the grounds of the Capitol.

**Schwartz's Violent Conduct and Officer Assaults on January 6, 2021**

The Lower West Terrace, which is a widely recognizable area of the Capitol Building, is located directly in the front-center of the building, facing the Washington Monument. The Lower

3

West Terrace is a very visible area of the Capitol Building that, in public perception, is often used for symbolic or patriotic events, such as presidential inaugurations. Indeed, on January 6, 2021, the Lower West Terrace was undergoing preparation for the inauguration of now-President Biden. Scaffolding had been erected for the media, and stairs, risers, and other flooring was in place to create the stage area upon which the inauguration would take place.

In the center of the Lower West Terrace is an archway with a short set of stairs that leads to a set of double doors; those doors permit entrance directly into the Capitol Building.[1] At around 2:30 p.m., a large group of MPD and USCP officers assembled to protect the Lower West Terrace entrance from an advancing and violent mob. That specific entrance was the site of some of the heaviest violence on January 6, 2021, as the rioters battled with police officers on-and-off from approximately 2:40 p.m. to 5:15 p.m. Over a period of about two-and-a-half hours, groups of rioters came in waves and gathered in the archway and tunnel as they attempted to violently breach the police line and gain entrance into the Capitol. On multiple occasions throughout that period, rioters overran the archway and physically battled with police officers inside the tunnel, directly at the Capitol threshold. At other times, officers were able to push the group of rioters out of the tunnel – away from the doors – and out onto the Lower West Terrace.

As detailed in the Amended Complaint (ECF No. 5), which is incorporated herein by reference, Schwartz placed himself in the thick of the violence on the Lower West Terrace, both

---

[1] Since January 6, 2021, this area has become colloquially known as "the tunnel." On January 6, 2021, the stairs leading from the Capitol doors down to the Lower West Terrace had been covered by a platform so that the tunnel floor was flush. At the entrance to the tunnel, stairs then led down to the Lower West Terrace itself. In the past, President-elects, including now-President Biden, walked through the Lower West Terrace entrance doors and the tunnel, and then down the stairs to the inauguration stage.

assaulting officers on the terrace and working with the larger mob to attempt to gain entrance to the Capitol Building via the center doorway. At around 2:30 p.m. Schwartz was captured on the body-worn camera ("BWC") of MPD Officer C.B. carrying a large canister of a chemical agent believed to be pepper spray[2] along the Lower West Terrace. *See* Gov't Ex. 1.[3] The video shows Schwartz repeatedly walking close to officers, pointing the canister, and spraying them with pepper spray. A screenshot from Officer C.B.'s BWC shows Schwartz pointing a pepper spray canister at a group of officers who are directly in front of him:

---

[2] We are using the term "pepper spray" here to describe the lachrymatory agent that Schwartz sprayed at officers. Some of the canisters wielded by Schwartz are identical to MPD issued MK-9 OC pepper spray, which is regularly carried and was carried by MPD officers on January 6, 2021. The reaction by the officers to being sprayed with the substance was consistent with the substance being a chemical irritant such as OC or pepper spray.

[3] As part of this pleading, the United States also submits four videos exhibits (Gov't Exhibits 1-4). These video exhibits were previously provided to the defense as part of discovery and constitute the best evidence of defendant's Schwartz's conduct on January 6, 2021. Undersigned counsel will provide these videos to the court via USAfx, or other appropriate electronic method specified by the Court.



About five minutes later, at 2:35 p.m., Schwartz was captured on the BWC of MPD Officer L.H. *See* Gov't Ex. 2. In that video, Schwartz can be seen extending his arm out toward a group of officers while holding a can of pepper spray. He then sprayed a stream of pepper spray directly at the group of officers. One officer quickly turned away after being sprayed, consistent with being hit with a chemical irritant.

Schwartz then made his way to the Lower West Terrace tunnel at around 3:07 p.m. While inside of the tunnel, surveillance video captured Schwartz handing a can of pepper spray to a another rioter who was closer to the line of officers attempting to protect the entrance to the Capitol. *See* Gov't Ex. 3. Surveillance video shows the other rioter attempting to use the spray canister against the officers, but the canister did not appear to work. The rioter then handed the canister back to Schwartz, who appeared to fix the canister. Schwartz then handed the canister back to the other rioter who, in turn, activated the spray against the line of officers.

6

After arming the other rioter with pepper spray, Schwartz joined the larger mob inside of the tunnel in attempting to push back officers who were holding the line at the entrance to the Capitol Building. Schwartz and the mob of other rioters attempted to use the weight of their combined bodies to push the officers back, trapping at least one officer in the process. As Schwartz and the crowd lunged toward officers, they yelled, "Heave Ho!" and pushed against the police line. Twenty seconds later, Officer Daniel Hodges can be seen being crushed in the tunnel door as another rioter pushes a riot shield against Officer Hodges' body, rendering him unable to move. *See* Gov't Ex. 4.

By Schwartz's own admission, he viewed himself as being at "war" that day, stating in a Facebook post on January 7, 2021, "What happened yesterday was the opening of a war. I was there and whether people will acknowledge it or not we are now at war."

Schwartz later bragged in text messages that he threw a chair at officers, and video evidence supports the suggestion that a person wearing clothing similar to Schwartz did throw a chair in the direction of the line of officers. Schwartz also bragged in text messages that he stole a duffle bag of "mace" from law enforcement that day and that he passed some of those canisters out to other rioters. He stated in one text message, "We're on our way back from DC . . . I th[r]e[w] the first chair at the cops . . . stole their sh** and used it on them!" He also took a photograph of a pin from a pepper spray canister and sent it by text message saying, "Souvenir pin from one of those giant mace tanks we used on them…" He further explained, "We charged the cops again after they'd retreated into the Capitol building, and we ALL got maced repeatedly and tear gassed. But we'd charge and wear the cops down until the gas got us, and then the next crew would go in while we recovered. Yup definitely was the cops [indiscernible] first!"

7

**Schwartz Was On Probation at the Time of the Offenses
and Has Several Active Warrants**

According to the Pre-Trial Services report prepared on April 7, 2021, at the time of the offense, Schwartz was on probation in multiple cases, including cases involving assaultive conduct or weapons. Currently, Schwartz appears to be on probation in the following cases:

- Marysville, OH – Domestic Violence (arrest date 10/4/2020)

- Daviess County, KY – Terrorist/Threatening 3rd Degree and Possession of a Firearm by a Convicted Felon (arrest date 7/28/2019)

- Daviess County, KY – Terroristic Threatening- 3rd Degree (arrest date 6/29/2019)

- Daviess County, KY – Traffic Offenses (arrest date 3/4/2019)

Moreover, there appear to be several active warrants for Schwartz's arrest, including:

- Bench Warrant (extraditable) – Probation Violation – Daviess County, KY[4]

- Failure to Appear Warrant – Traffic Offenses – Muhlenberg County, KY (arrest date 6/17/2019)

- Bench Warrant – Assault 3rd Degree – Bronx County, NY (arrest date 2/17/2002)

- Bench Warrant – Traffic Offenses – Bronx County, NY (arrest date 8/20/2001)

**Schwartz Has An Extensive Violent Criminal History**

In addition to being on supervision in multiple open cases, Schwartz has also been convicted of numerous offenses, many involving violence, including:

- Possession of a Handgun by a Convicted Felon and Terroristic Threats in 3rd degree – Daviess County, KY (arrest date 11/25/2015)

- Possession of Methamphetamine – Daviess County, KY (arrest date 11/8/2013)

- Breaking or Entering – Burgaw, NC (arrest date 8/3/2006)

---

[4] This warrant did not appear in the Pretrial Services Report, but the FBI confirmed that a bench warrant was issued on January 29, 2021, and that it is extraditable.

8

- Assault of Government Official – New Hanover County, NC (arrest date 4/1/2006)

- Assault with Deadly Weapon – Raleigh, NC (arrest date 3/30/2005)

- Larceny – Raleigh, NC (arrest date 3/30/2005)

- Theft – Morton, IL (arrest date 5/30/2000)

- Battery – Tazewell County, IL (arrest date 9/13/1997)

- Battery/Make Physical Contact – Peoria County, IL (arrest date 9/28/1996)

## Procedural History

Schwartz was initially charged by Amended Complaint with: [1] Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); [2] Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); [3] Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority in violation of 18 U.S.C. §§ 1752(a)(1), (2) and; [4] Disorderly Conduct and Physical Violence on the Capitol Grounds, in violation of 40 U.S.C. §§ 5104(e)(2)(D). (ECF No. 5). Schwartz was arrested on February 4, 2021, in the Western District of Pennsylvania; the Court held his Rule 5 initial appearance that same day, at which time the United States requested his detention.

On February 11, 2021, a magistrate judge in the Western District of Pennsylvania conducted a detention hearing and found that the United States established by clear and convincing evidence that no combination of conditions of release would reasonably assure the safety of any other person and the community.

On March 3, 2021, a federal Grand Jury returned a fourteen-count indictment (ECF No. 13) against Schwartz, charging him with three counts of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); three counts of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Obstruction of an Official Proceeding, in

9

violation of 18 U.S.C. § 1512(c)(2); and seven misdemeanor charges. On April 7, 2021, Schwartz was arraigned on the indictment and entered a plea of not guilty. On June 7, 2021, he filed the instant motion to set bond and conditions of release.

## Argument

### There Are No Release Conditions or Combination of Conditions That Would Protect the Community and Assure the Defendant's Future Appearance

When considering whether pretrial detention is appropriate due to dangerousness, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g). When applied to the defendant, these factors establish that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community. Further, there are no conditions that would reasonably assure the defendant's appearance if he were to be released.

    a. Nature and Circumstances of the Offenses Charged

Schwartz's violent participation in a "war" against the police officers protecting a lawful proceeding of Congress, for which he is now charged with multiple felonies – including crimes of violence – weighs heavily in favor of detention. Not only was his individual conduct dangerous and destructive, but his actions heightened and encouraged the overall violence and dangerousness of the day.

Nowhere in his motion for bond review does Schwartz argue that the nature and circumstances of the offenses charged weigh in favor of his release—nor could he. In *United States v. Chrestman*, 21-mj-218-ZMF, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021), the Chief

Judge outlined the factors to be considered when determining whether to detain an individual who participated in the January 6, 2021, riot. These factors, each of which touches on the nature and circumstances of the crime, include: (1) whether the defendant is charged with a felony or a misdemeanor; (2) whether there is evidence of pre-planning; (3) whether the defendant possessed or used a weapon as part of the offense; (4) whether there is evidence of coordination with other rioters before, during, or after the offense; (5) whether the defendant had a leadership role or encouraged others to act in an unlawful manner, (6) the defendant's words and movements during that day; and (7) whether the defendant caused injury or damage during the course of the offense. *See generally Chrestman*, 2021 WL 765662, at *7-*8.

Here, the *Chrestman* factors support Schwartz's continued detention. A Grand Jury has charged Schwartz with seven felony and seven misdemeanor charges. (ECF No. 13); *See United States v. Chrestman*, 21-mj-218-ZMF, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021) ("The first differentiating factor, evident on the face of a criminal complaint, information, or indictment, is whether a defendant has been charged with felony or misdemeanor offenses. Felony charges are by definition more serious than misdemeanor charges; the nature of a felony offense is therefore substantially more likely to weigh in favor of pretrial detention than the nature of a misdemeanor offense."). Additionally, Schwartz is charged with repeatedly using a dangerous weapon – in this case a chemical agent such as pepper spray – against multiple officers during this course of his attack on the capitol. Moreover, he coordinated with other rioters, most notably the group of rioters who attempted to breach the Lower West Terrace entrance and specifically another rioter who was seeking to use pepper spray against the line of officers protecting the entrance. Schwartz's words

11

after-the-fact also support detention. He did not express any remorse for his actions but, instead, bragged out both his violence and his theft of law enforcement property.

The recent decision in *United States v. Munchel*, No. 21-3010, 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021), also supports Schwartz's continued detention. The *Munchel* Court, reviewing the detention order of a mother-son duo who entered the Capitol on January 6, 2021, with zip ties and a taser, found that the District Court did not adequately address the dangerousness determination. The circuit specifically focused on the District Court's insufficient justification for its dangerousness conclusion "notwithstanding the countervailing finding that 'the record contains no evidence indicating that, while inside the Capitol, [the defendants] vandalized any property or physically harmed any person,' and the absence of any record evidence that either [defendant] committed any violence on January 6." *Munchel*, 2021 WL 1149196, at *8 (internal citations omitted). The Court instructed the District Court to consider these factors in its review on remand. *Id.* ("If, in light of the lack of evidence that [the defendants] committed violence on January 6, the District Court finds that they do not in fact pose a threat of committing violence in the future, the District Court should consider this finding in making its dangerousness determination.") Most significantly, in remanding the matter to the District Court, the Circuit specifically found that, "*those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way.*" *Id.* (emphasis added) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) ("[W]here the future misconduct that is anticipated concerns violent criminal

activity, no issue arises concerning the outer limits of the meaning of 'danger to the community,' an issue that would otherwise require a legal interpretation of the applicable standard.")).

Defendant Schwartz stands firmly in the category of heightened dangerousness that the *Munchel* court identified: he actually assaulted multiple officers; he coordinated his actions with others and claimed that he stole and distributed "mace" to other rioters; and he later bragged and celebrated the fact that he had participated in the violent assaults at the Capitol. He was not an unwitting bystander or someone who merely got caught up in the frenzy of the crowd. Instead, he was a determined participant in breaching the Capitol and the aggression he exhibited toward officers in the police line was extremely violent. Schwartz admitted that he believed he was at the Capitol waging a "war," and demonstrated his belief by engaging in combative conduct against law enforcement.

This factor weighs heavily in favor of detention.

Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The evidence against Schwartz is overwhelming and is in large part captured on video. As detailed in the Amended Affidavit (ECF No. 5), Schwartz was wearing a distinctive yellow-and-blue checked jacket, an American flag bandana as a head covering, jeans, and brown boots at the Capitol on January 6, 2021. Two witnesses identified Schwartz in various videos and photographs from the Capitol that day—one witness was previously a friend of the defendant, and the other is a Lieutenant in the Owensboro, Kentucky, police force who has served legal process on Schwartz. When officers searched Schwartz's residence pursuant to a search warrant, they recovered the distinctive checked jacket, brown boots, and bandana, along with other items.

Moreover, Schwartz's text messages and social media posts show that he was at the Capitol on January 6, 2021, and willingly participated in the violence against police officers. He admitted to waging "war" and being "prepared . . . and even expecting . . . to die" at the Capitol that day. He admitted to throwing "the first chair at the cops" and then "grabb[ing] their duffel bags full of mace." He sent a photograph by text message of a pin from a pepper spray canister and bragged that it was a "souvenir" from the January 6 riots. And he admitted to "charg[ing] the cops after they'd retreated into the Capitol building," and "wear[ing] the cops down. . . ." The evidence against Schwartz is compelling, and the strength of the evidence weighs heavily in favor of detention.

    b. <u>Defendant's History and Characteristics</u>

The defendant contends that he should be released because he is "47 years old," "gainfully employed as a contract welder," and "is married." (Def. Mot. at 5). However, he fails to mention that he has an extensive violent criminal history, several outstanding warrants for his arrest, and was on probation in four cases when he assaulted law enforcement on January 6, 2021.

Schwartz's conduct on January 6, 2021, reflects poorly on his character and demonstrates an utter disregard for the law and the legitimate functions of government, providing clear and convincing evidence that he is unwilling to follow lawful orders or to defer to the legal authority of the government. His actions on January 6, 2021, were not out of character for him. In fact, he previously has been convicted of Assault on a Government Official; multiple counts of Terroristic Threats; Felon is Possession of a Firearm; Assault with a Deadly Weapon; and other serious offenses.

When Schwartz assaulted officers during his attempt to storm the Capitol, he did so in the presence of hundreds of USCP and MPD officers who were working to protect both the constitutionally-mandated certification proceeding and the members of Congress duty-bound to hold that proceeding. Schwartz blatantly assaulted officers in full view of other law enforcement, disregarding any possible consequences of his actions. Additionally, rather than express any contrition for his violent conduct, he later bragged about his participation to other people by text message.

The dangerousness of Schwartz's participation in the mob that day is only amplified by the fact that, at that time, he was on probation in four other cases. Rather than follow his conditions of probation – which presumably prohibit unlawful conduct – he instead decided to wage "war" at the Capitol. Such blatant disregard of the law and the valid authority of our government, along with his indifference to the terms of his probation, make it highly unlikely that Schwartz would obey any order of this Court. If Schwartz is unwilling to obey orders while in full view of law enforcement, or to conform his behavior to the law when he disagrees with it, it is unlikely that he would adhere to this Court's directions and release orders.

Accordingly, this factor weighs substantially in favor of detention.

  c. <u>Danger to the Community</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of Schwartz's continued detention. It is difficult to fathom a more serious danger to the community—to the District of Columbia, to the country, or to the fabric of American Democracy—than the one posed by someone who knowingly and eagerly engaged in a violent insurrection to occupy the United States Capitol and abort the

certification of a lawful and fair election. Every person who was present without authority at the Capitol on January 6, 2021, contributed to the chaos of that day and the danger posed to law enforcement, the United States Vice President, Members of Congress, and the peaceful transfer of power. Schwartz's specific conduct aggravated that chaos and danger and demonstrates that he is willing and able to use violence to achieve his goals.

The defendant's assault of officers at the Capitol Building, his use of pepper spray against police officers, and his assistance to others to break the law and join in the attempt to stop the democratic process illustrate his danger to the community. *See Chrestman*, 2021 WL 765662, at *15 ("Nearly as significant is defendant's use of force to advance towards the Capitol and his use of words to lead and guide the mob in obstructing the police and pushing against police barriers"). This danger is only amplified by the fact that he was on post-trial supervision in four cases at the time of the offense. Schwartz presents a significant danger to the community and the United States seeks his continued detention as a result.

### There Are No Release Conditions or Combination of Release Conditions That Would Ensure the Defendant's Return to Court if Released

Schwartz also poses a serious risk of flight if he were to be released. As described above, there appear to be four active warrants for the defendant, dating back to 2001. One of those warrants is an extraditable bench warrant out of Kentucky that was issued when Mr. Schwartz failed to report to his probation officer. Moreover, Schwartz apparently has few ties to any one community. In fact, based on the Pretrial Services Report, Schwartz has committed crimes in over ten cities and towns. And he has not always returned to those locations to resolve his criminal cases—as evidenced by the four pending bench warrants for his arrest. This factor also weighs heavily in favor of detention.

## **Conclusion**

In sum, Schwartz asks this Court to ignore the nature of his violent crime, the weight of the evidence, his lengthy criminal history, his poor performance on probation, his multiple bench warrants, and draw a conclusion that he is not a danger to the community and should be released pending trial.  Given the above assessment of all four relevant factors, however, there is clear and convincing evidence that there are no conditions or combinations of conditions that could reasonably assure the safety of the community and Schwartz's compliance with Court orders.  Moreover, nothing will ensure that Schwartz would return to Court as he has a track record of failing to appear.  Only his continued detention mitigates such dangers.

WHEREFORE, the United States respectfully requests that the Court deny the defendant's motion to set bond and conditions of release.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: /s/ *Jocelyn Bond*
JOCELYN BOND
ELIZABETH C. KELLEY
Assistant United States Attorneys
D.C. Bar No. 1008904
555 4th Street, N.W.
Washington, D.C. 20530
202-809-0793
Jocelyn.Bond@usdoj.gov
Elizabeth.Kelley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2021, I caused a copy of the foregoing opposition to be served on counsel of record via electronic filing.

/s/ *Jocelyn Bond*
JOCELYN BOND
Assistant United States Attorney