UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:21-cr-00178-APM |
| ) | |
| PETER SCHWARTZ, ) | |
| ) | |
| Defendant. ) | |

## MOTION TO DISCLOSE INFORMANTS

Defendant Peter Schwartz, through undersigned counsel, respectfully moves this Honorable Court, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), United States v. Morgan, 581 F.2d 933 (D.C. Cir. 1979), and Roviaro v. United States, 353 U.S. 53 (1957), to order the government to disclose:

> 1) the identity of and contact information for any individual who was a confidential source of information for any federal law enforcement agency, including all FBI "Confidential Human Sources," the Capitol Hill Police, or the Metropolitan Police Department of the District of Columbia, who were present at the Capitol Mall Rally on January 6, 2021, or at the Capitol Hill Protest that followed on that same date.
>
> 2) the identity, agency, and current duty station of any federal law enforcement agent, including Special Agents of the FBI, who were who were present in "plain clothes" or other undercover capacity at the Capitol Mall Rally on January 6, 2021, or at the Capitol Hill Protest that followed on that same date.

In addition, Mr. Schwartz seeks an order mandating that the government disclose:

    a)    Any information suggesting or affirming whether any informant was under the influence of alcohol, narcotics, or other drug at the time of attending events at the Capitol Mall or on Capitol Hill, or that the informant's faculties to observation and recollect were impaired in any manner;

b) The length of an extent of the any informant's status in that capacity, and with what law enforcement agencies;

c) All amounts paid to any informant;

d) Any nonmonetary assistance or benefits provided to the informant, including, but not limited to, assistance in avoiding or minimizing harm from charges pending against the informant, such status having existed either at the time of the offense and/or any other time through the day at trial;

e) All benefits or promises of benefit or statements that benefit would not be provided to any such informant without cooperation, and that were made to the informant in connection with any matter, whether or not fulfilled. "Benefit" refers to any monetary compensation, assistance of the prosecutor or the court concerning pending charges against the informant, or any other sort of consideration of value;

f) The nature of assistance provided before January 6, 2021, including the number of occasions and form(s) of help.

As a factual basis for this motion, the defendant asserts:

1. Mr. Schwartz is charged by superseding indictment with, among other things, assault on a law enforcement officer with a dangerous weapon, i.e., pepper spray.

2. In the superseding indictment filed on October 27, 2021, a second defendant was named for the first time, co-defendant Jeffrey Scott Brown. Mr. Schartz does not know and had never met Brown before Brown's arrival at the District of Columbia detention facility.

3. Mr. Schwartz is contemplating presentation of a defense based on entrapment by government agents and/or informants.

4.      Mr. Schwartz has pleaded not guilty, and contends that he came to Washington D.C., for a political rally and protest that was planned for January 6, 2021. To the extent the rally and protest devolved into other activities, those activities were not consistent with Mr. Schwartz's motives and intentions in going to Capitol Hill. Mr. Schwartz lacked a predisposition to engage in the criminal activity instigated and initiated by others around him.

5.      In the Affidavit supporting the Criminal Complaint filed against defendant Fi Duong, Case No. 21 mj 00511 RMM, filed with this Court on June 30, 2021, FBI Special Agent Jason Jankovitz wrote:

> On the morning of January 6, 2021, FI DUONG and an associate of his (ASSOCIATE 1) introduced themselves to a Metropolitan Police Department Undercover Employee (MPD UCE) in the vicinity of Freedom Plaza, Washington, D.C.

6.      On September 25, 2021, the New York Times reported that it had reviewed documents setting forth communications between an FBI Confidential Human Source in a network of "Proud Boys" defendants and the source's FBI handler in the days and hours leading up to the protests on January 6, including communications while the protest was underway.[1]

7.      On October 21, 2021, United States Attorney General Merrick Garland, while testifying before the House Judiciary Committee, declined to answer questions put to him by members of the committee regarding the presence of informants or undercover agents/officers among the crowd of protesters on January 6, on the basis that any such answers would require him to comment on ongoing investigations. A denial of the presence of such informants and/or undercover agents/officers, if true, would not have any implication for any prosecution or investigation. Thus, the refusal of the Attorney General to confirm their presence is, in itself, an

---

[1] https://archive.md/kzNMv

implicit confirmation that there were some present, and that evidence of their presence has not yet been accounted for in this case and others.

8. Mr. Schwartz recalls seeing duffle bags in various locations around the Capitol grounds just prior to and during the protests. Mr. Schwartz saw numerous "pepper spray" containers inside the duffle bags when they were opened by others. The source of these duffle bags and the contents therein, if government actors, is information that is material to the defense in this case.

## ARGUMENT

In Roviaro v. United States, 353 U.S. 53 (1957) the Supreme Court acknowledged criminal defendant's entitlement to the disclosure of an informant's identity in certain circumstances.

In this case, the identity of any informants or undercover agents in the crowd of protesters could lead to exculpatory information regarding the conduct of Mr. Schwartz during the course of the protests, or the misconduct of government actors that initiated or escalated the violent clashes between the protesters and law enforcement.

As has now become clear with the massive volume of video surveillance available to the Department of Justice, all moments and activities of Mr. Schwartz and other protesters was captured on video by the near blanket coverage of the Capitol and Capitol Hill grounds by CCTV cameras and body worn cameras of the untold number of law enforcement officers involved in responding to the protests.

The Government has this evidence. The government is uniquely situated to analyze this evidence. Pursuant Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), the prosecutors in this case are charged with having constructive knowledge of everything shown

by each of those cameras, as well as any and all participant video which the government has accumulated in its investigation to date.

> But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that <u>the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police</u>. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, see <u>Brady</u>, 373 U. S., at 87), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

The government has acknowledged that undercover law enforcement agents were present in the crowd. News reports suggest that discovery in other indicted cases discloses the presence of informants working with one or more federal law enforcement agencies were in the crowd and were providing real-time information to their handlers.

Only the government has access to all the video surveillance taken on January 6th, both the CCTV, body camera video, and participant video that the government has seized. Only the government knows the identity of the undercover agents and cooperating informants mixed in with the crowd.

The government created and is solely responsible for the "surveillance state" that existed on Capitol Hill on January 6th, recording the movements of every person who was outside and inside the Capitol that day. Only the government has been able to track Mr. Schwartz's movements from the earliest moment he was captured on CCTV or body camera footage. Only the government knows whether Mr. Schwartz came into contact with undercover agents or cooperating informants during the course of events during January 6. Only the government knows if any undercover agent or cooperating informant was a witness to anything alleged to

have been done by Mr. Schwartz, the events immediately after the alleged offenses, and the events immediately after the alleged offenses.

Only defense counsel and Mr. Schwartz fully understand how such evidence might serve Mr. Schwartz's defense theory at trial, but defense counsel and Mr. Schwartz do not have the information held by the government. Thus, disclosure of the identities and a description of what was seen and/or heard by the undercover officers and cooperating informants present in the crowd is essential to the ability of the defense to make use of such evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963).

In Roviaro the Supreme Court acknowledged the need for defense counsel to interview the witness. 353 U.S. at 64 ("[t]he desirability of, ... at least interviewing [the confidential informant] in preparation for trial, [is] a matter for the accused rather than the government to decide"). Likewise, in other contexts the Supreme Court has held that an interest in confidentiality is overcome when the accused's right of confrontation is at stake. See Davis v. Alaska, 415 U.S. 308 (1974).

It is the DOJ in general, and the individual prosecutors in this case specifically, who are charged with the obligation to know and disclose this information. But it is the privilege of the defense to decide whether and how to make use of this evidence at trial. That decision cannot be make without the evidence itself.

The information sought, in addition to the identities, relates directly to the credibility of the undercovers/informants and their biases, thus it is potentially exculpatory information. Giglio v. United States, 405 U.S. 150 (1972).

CONCLUSION

Based on the foregoing, and any other material which may appear in the record of this case or supplemental pleadings that Mr. Schwartz reserves the right to file, and at a full hearing on this matter, the Defendant respectfully requests that this Motion be granted and that this Court order the government to disclose the requested information.

Date: December 1, 2021　　　　　　　　　　Respectfully Submitted,

*John M. Pierce* (signature)

John M. Pierce (*PHV Admitted*)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

**CERTIFICATE OF SERVICE**

  I, John M. Pierce, hereby certify that on this day, December 1, 2021, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

                /s/ John M. Pierce
                John M. Pierce