UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**      : | |
| : | |
| v.      : | Case No. 21-cr-00178-APM |
| : | |
| **PETER J. SCHWARTZ,**      : | |
| : | |
| : | |
| **Defendant.**      : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER BOND

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Peter Schwartz's "Motion to Reconsider Bond Status and Release Pending Trial," filed on March 1, 2022.  ECF No. 76.  As the court found following a bond review hearing on June 24, 2021, defendant Schwartz is a danger to the community and there is no combination of conditions that could protect the safety of the community if Mr. Schwartz were to be released.  Defendant Schwartz has cited no relevant "changed circumstances" under 18 U.S.C. § 3142(f) which would ameliorate the ongoing danger that he poses, nor has he provided information demonstrating that release is "necessary" for the preparation of his defense.  *See* 18 U.S.C. § 3142(f).

The defendant's chief argument for release is that he has not yet had an opportunity to review his case-specific discovery via the electronic discovery program at the Central Detention Facility, despite the fact that the United States has provided substantial discovery to counsel for Mr. Schwartz, who may choose from multiple alternate methods of sharing that discovery directly with the defendant.  The underlying reasons that the Court found defendant Schwartz to be a danger have not changed and his complaints regarding access to discovery are not appropriately addressed

in the vehicle of a bond review motion. In the alternative, and without providing any legal authority, the defendant asks the Court to exclude evidence at trial that Mr. Schwartz has not yet reviewed.

Defendant Schwartz's release would not be justified at this point, nor would the exclusion of evidence. The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020). In this case, the defendant has not offered any "new" information and the information proffered is not material. His motion to reconsider his bond status should be denied.

## BACKGROUND

Defendant Peter Schwartz was arrested in the Western District of Pennsylvania on February 4, 2021, for conduct relating to his actions at the United States Capitol on January 6, 2021. On February 11, 2021, a magistrate judge in the Western District of Pennsylvania conducted a detention hearing and found by clear and convincing evidence that no combination of conditions of release would reasonably assure the safety of any other person and the community. Defendant Schwartz has been detained since that time and, following a hearing on June 24, 2021, the Court denied the defendant's "Motion to Set Bond and Conditions of Release," filed on June 7, 2021.

ECF No. 24.  The United States hereby incorporates by reference its Memorandum in Opposition, filed on June 15, 2021, with respect to Mr. Schwartz's ongoing dangerousness.  ECF No. 26.

Defendant Schwartz has been detained since his arrest and has been held predominantly at the Central Treatment Facility, located in the District of Columbia.  Trial in this case is scheduled to begin on November 1, 2022.

## ARGUMENT

**I.     The Defendant Presents no New and Material Facts Justifying Release**

The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

Previously available information—even if "material"—is not grounds to reopen a detention hearing. *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision." *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection

with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, "Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). Thus, a detention hearing must be held at the government's request only "in a case that involves" a charged offense falling in one of five enumerated categories, 18 U.S.C. § 3142(f)(1)(A)–(E), or if the defendant poses a serious risk of flight or of attempting to obstruct justice or threaten, injure, or intimidate a witness or juror, *id*. § 3142(f)(2)(A)–(B). The BRA "requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). This court found that there was "clear and convincing evidence" that there was no combination of release conditions that would maintain the safety of the community following a hearing on June 24, 2021.

The defendant offers no new material evidence that was related to the question of detention that was not available at the time of the hearing. The defendant also argues that the conditions of his confinement support release, but does not cite any applicable legal authority in support of his motion.

## II. Defendant Schwartz Has Multiple Alternate Methods of Viewing His Own Discovery, Despite the Difficulties at CTF with the E-Discovery Program

During the pendency of this case, the United States has provided counsel for defendant Schwartz with substantial discovery related to Mr. Schwartz's specific conduct on January 6, 2021, as well as with voluminous discovery related to the overall riot on the same date. The United

States has done this not just once, but has provided discovery to each of defendant Schwartz's three prior attorneys on three independent occasions. The United States has been diligent in providing case-specific discovery to counsel and has regularly updated current counsel on the status of voluminous discovery. While defense counsel has unfettered access to the discovery that has been provided to date, the manner in which that same discovery is available directly to Mr. Schwartz for review is necessarily limited by his detention. The primary method of providing discovery to an inmate at the CTF has long been, and remains, for counsel for the defendant to set up an in-person meeting, bring his own computer, and to review discovery with this client. Based upon defendant's Schwartz's motion, there is no indication that this essential step has been undertaken by either Schwartz's current or prior counsels to date.

Instead, counsel for defendant Schwartz appears to have relied solely on an alternate, and much newer, system that is being piloted for providing discovery through an e-discovery program established at CTF to allow for more efficient review of more voluminous evidence. Under this system, counsel is permitted to provide discovery to an incarcerated defendant in an electronic format, such as via a USB drive. Once received by CTF, the defendant will then be placed on a waiting list to review that electronic discovery with a tablet or laptop provided by CTF. Based upon information provided by CTF, it appears that current counsel delivered a USB drive to CTF on February 23, 2022. At that time, defendant Schwartz was placed on the waiting list to receive a laptop/tablet to review his discovery. The United States does not dispute the frustrations encountered by current counsel due to implementation of the e-discovery program, or the additional restrictions on visitation due to COVID-19. Nevertheless, Mr. Schwartz has had regular access to contact with each of his three attorneys, any of whom has or has had the opportunity to

schedule an in-person discovery review meeting with him. He also now has direct access to video evidence via Evidence.com and he is on a waiting list to receive electronic discovery directly from his counsel.

### III. Defendant Schwartz has Not Demonstrated that the Conditions at the Department of Corrections justify his release

The Defendant's claims do not establish that he is entitled to the relief he seeks. To be sure, the defendant is entitled to the opportunity to meaningfully confer with counsel and to prepare a defense. But the defendant cites no authority suggesting that his complaints justify reopening the detention hearing and ordering his release. Indeed, the concerns raised by the defendant are entirely independent of the factors this Court must analyze in making a detention decision under the Bail Reform Act—which has already come and gone in this case.

As this Court knows, on March 30, 2020, a civil complaint was filed in the United States District Court for the District of Columbia, on behalf of defendants detained at the Central Detention Facility and Central Treatment Facility (CTF), alleging that by the D.C. Department of Corrections (DOC) was failing to take reasonable precautions to prevent the spread and severity of a COVID-19 outbreak. That case, *Banks v. Booth* (20-cv-849), was assigned to another judge in this Court, who on April 19, 2020 issued a temporary restraining order (ECF No. 48), and on June 18, 2020, issued a preliminary injunction (ECF No. 100) that addressed, in part inmates' access to confidential legal calls in light of enhanced restrictions in place to address the pandemic, and ordered DOC to ensure that all inmates have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters, and to "swiftly implement to use of such technology" necessary to accomplish this (ECF No. 100 at 39).

On December 12, 2020, amici filed a report to provide information to the Court regarding DOC's compliance with the Court's June 18, 2020, preliminary injunction (ECF No. 138). That report noted that the DOC had purchased significant amounts of new technology to facilitate attorney client communications, including through the use of cell phones from within their cells; and that the DOC facilitated more than 1500 such calls each month. The report also noted that DOC had purchased a number of tablets that inmates were permitted to use to review discovery and to communicate with their attorneys using secure messaging (ECF No. 139 at 42). Finally, the report noted that the DOC facilitated 1,209 videoconferences between attorneys and their clients between May and October 2020 (Id. at 40-41).

On March 15, 2021, DOC issued a new procedure for voluminous electronic discovery. The policy would allow inmates to review electronic materials in their individual cells on a laptop provided by DOC. The government's position is that this procedure satisfies the requirements of the Protective Order regarding discovery in this case, so it would not limit the defendant's access to sensitive materials.

The defendant similarly cites no authority—and the government is not aware of any—standing for the proposition that restrictive housing or any of the other conditions at the jail raised by the defendant entitle him to release under the Bail Reform Act, which is the relief he seeks in this motion. Yet the information he proffers does not meet the standard set out in the Bail Reform Act, whether to reopen the hearing or to support a decision to release the defendant on the merits.

To be clear, the government is committed to ensuring the safety all of inmates, regardless of their detention status. But it is also critical, from the government's perspective, to allow the issues to be properly litigated in their proper course. Civil litigation is the proper venue to address

complaints of mistreatment by the jail. *See United States v. Brooks*, 2020 U.S. Dist. LEXIS 230323, at *10 (D.D.C. Dec. 7, 2020) ("As the government correctly rejoins, any such constitutional claim must be raised via a separate civil suit and cannot be part of a compassionate-release motion in the underlying criminal case. Courts all over the country have concurred."); *United States v. Smith*, 2020 U.S. Dist. LEXIS 213050, 2020 WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases); *see, also, e.g., United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court").

The proper way to raise such a claim is to file a civil suit against the Department of Corrections or its warden. *See*, e.g., *United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *Campbell v. McGruder*, 416 F.

8


Supp. 100, 101 (D.D.C. 1975) (addressing "class action brought by unconvicted pre-trial detainees incarcerated at the District of Columbia jail"). Here, the Court has reviewed the Bail Reform factors and ordered Mr. Schwartz detained. That ruling should not be disrupted.

## IV.     The Court Should Summarily Deny the Defendant's Alternative Argument

In the alternative, Defendant Schwartz asks the Court to exclude at trial "any evidence which has been withheld from Mr. Schwartz." The defendant has provided no legal support for his alternate argument and the United States asks the Court to summarily deny the defendant's request to exclude evidence. The United States reiterates that the evidence in question has been repeatedly provided to counsel and *is* available to Mr. Schwartz in multiple formats. First, the evidence, including videos, is in the possession of defense counsel, who has the option of meeting with Mr. Schwartz in person and showing him relevant videos and other evidence during an in-person meeting. Second, Mr. Schwartz now has access to Evidence.com, which contains the vast majority of Body Worn Camera footage and surveillance footage from the overall riot, including those clips that are specifically relevant to Mr. Schwartz's case. Finally, on March 15, 2022, the defendant and his counsel met in person with attorneys for the United States to review the most relevant videos and other evidence in Mr. Schwartz's case. While Mr. Schwartz has not yet had the easy access to a laptop for discovery review that he would prefer, counsel for the defendant has multiple options for providing Mr. Schwartz with this own discovery. Moreover, trial is not scheduled to begin for over six months, and there is no reason to expect that Mr. Schwartz will not have an opportunity to review his discovery in advance of trial. Exclusion should be summarily denied.

## **CONCLUSION**

The defendant has not proffered any new facts that would materially alter the decision to detain the defendant, nor has he provided any legal support for the exclusion of evidence at trial. For the foregoing reasons, and any as may be cited at a hearing on this motion, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ *Jocelyn Bond*
JOCELYN BOND
ELIZABETH C. KELLEY
Assistant United States Attorneys
D.C. Bar No. 1008904
555 4th Street, N.W.
Washington, D.C. 20530
202-809-0793
Jocelyn.Bond@usdoj.gov
Elizabeth.Kelley@usdoj.gov