## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-178 (APM)** |
| **v.** | : | |
| | : | |
| **PETER J. SCHWARTZ, et. al.,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' OPPOSITION TO DEFENDANTS SCHWARTZ
## AND BROWN'S SEVERANCE MOTIONS

Defendant's Peter J. Schwartz and Jeffrey Brown, who are charged together in connection with the events at the U.S. Capitol on January 6, 2021, have moved to sever their trials from those of their codefendants. ECF Nos. 120, 122. Both Schwartz and Brown seek a severance under Federal Rule of Criminal Procedure 14. Alternatively, Schwartz argues that the charges against him were misjoined with those against his codefendants, in violation of Federal Rule of Criminal Procedure 8(b). Schartz's 8(b) claims are meritless, and this Court should deny Schwartz's and Brown's Rule 14 severance requests as a matter of its discretion, in order to efficiently manage its resources.

## **BACKGROUND**

The grand jury returned the 13 count Second Superseding Indictment that was filed on February 9, 2022. ECF No. 63. Defendants Schwartz and Brown were charged in the following counts, occasionally with one or all codefendants:

| Count 1:<br>Schwartz | 18 U.S.C. §§ 111(a)(1) and (2)  (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon) | No codefendant |
|---|---|---|
| Count 2:<br>Schwartz and Brown | 18 U.S.C. § 231(a)(3) (Civil Disorder) | All other codefendants |

1

| Count 3: Schwartz | 18 U.S.C. §§ 111(a)(1) and (2)  (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon) | No codefendant |
|---|---|---|
| Count 4: Schwartz | 18 U.S.C. §§ 111(a)(1) and (2)  (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon) | No codefendant |
| Count 7: Schwartz and Brown | 18 U.S.C. §§ 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and Aiding and Abetting) | Codefendant Maly |
| Count 8: Schwartz | 18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and Abetting) | No codefendant |
| Count 9: Schwartz and Brown: | 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) | All other codefendants |
| Count 10: Schwartz and Brown | 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disorderly And Disruptive Conduct In A Restricted Building Or Grounds with a Deadly or Dangerous Weapon) | All other codefendants |
| Count 11: Schwartz and Brown | 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) | All other codefendants |
| Count 12: Schwartz and Brown | 40 U.S.C. §§ 5104(e)(2)(D) and 18 U.S.C. § 2 (Disorderly Conduct in a Capitol Building and Aiding and Abetting) | All other codefendants |
| Count 13: Schwartz and Brown | 40 U.S.C. §§ 5104(e)(2)(F) and 18 U.S.C. § 2 (Act of Physical Violence in the Capitol Grounds or Buildings and Aiding and Abetting) | All other codefendants |

Codefendant Shelly Stallings has elected to plead guilty.  *See* ECF No. 111.  Accordingly, Schwartz and Brown's severance claims should be assessed against only each other and against codefendant Maly, not against Stallings.

## **ARGUMENT**

I.   **Schwartz's Rule 8(b) Arguments Fail Because He "Participated in the Same Series of Acts" as His Codefendants When They Jointly Attacked Police Officers at the Same Time and Location.**

Schwartz contends he was improperly joined with other defendants, in violation of Federal Rule of Criminal Procedure 8(b). *See* Schwartz's Motion, ECF No. 120, at 3-4.  Schwartz is wrong. Rule 8(b)'s standard for the joinder of multiple defendants is easily met in this case where all four defendants, including Schwartz, participated in the same "series of acts" when they all physically attacked, within a relatively small confined space and during a narrow window of time, the police

2

officers who were guarding the doors inside the Lower West Terrace Tunnel of the Capitol Building to prevent the mob of rioters from entering the building.

In cases with multiple defendants and multiple offenses, Rule 8(b) provides the "standard for determining the permissibility of joinder of offenses." *United States v. Wilson*, 26 F.3d 142, 153 n. 4 (D.C. Cir. 1994) (cleaned up). It states:

> JOINDER OF DEFENDANTS.  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or *in the same series of acts* or transactions, *constituting an offense or offenses*.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b) (emphasis applied).[1]  Joint trials further several interests, including "conserving state funds, diminishing inconvenience to witnesses and public authorities, and avoiding delays in bringing those accused of crime to trial.'" *United States v. Brown*, 16 F.3d 423, 428 (D.C. Cir. 1994) (cleaned up). Consequently, "[t]here is a preference in the federal system for joint trials," *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019), and the D.C. Circuit construes Rule 8(b) broadly in favor of joinder, *see United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) (it is "difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)").

The propriety of joinder "is determined as a legal matter by evaluating only the 'indictment [and] any *other pretrial evidence offered by the Government*.'" *United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006) (emphasis added). Joinder under Rule 8(b) "is appropriate if there is a 'logical relationship between the acts or transactions' so that a joint trial produces a 'benefit to the

---

[1] Fed. R. Crim. P. 8(a), on the other hand, applies only to the joinder in a single charging document of multiple counts against a single defendant. *See United States v. Gooch*, 665 F.3d 1318, 1325 (D.C. Cir. 2012).

courts.'" *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)).

A.   **Schwartz is Properly Joined because of the Evidentiary, Temporal, Spatial, and Logical Intersections between his Criminal Conduct and That of his Codefendants, Demonstrating They Participated in a "Series of Acts Constituting an Offense."**

Schwartz contends there is "not sufficient nexus" between the charged conduct of Schwartz and his remaining codefendants. Schwartz's Motion at 4. He argues that Schwartz, Brown, and Maly "did not collaborate in any fashion on, before or after January 6, 2021," which is underscored by the fact that the government has not charged the defendants together in a conspiracy count. His premise is faulty. Schwartz, Brown, and Maly, together with many dozens of others, jointly attacked the vastly outnumbered police officers positioned at the rear of the tunnel on the second landing of the Lower West Terrace ("LWT Tunnel" or "Tunnel") of the Capitol Building at approximately 3:07 p.m. While inside the tunnel, surveillance video captured Schwartz handing a can of pepper spray to Maly, who was close to the line of officers that were attempting to protect the entrance to the Capitol. Maly then handed the can to Brown, who attempted, unsuccessfully, to use the spray canister against the officers. Brown then handed the canister back to Schwartz, who appeared to fix the canister. Schwartz then handed the canister back to Brown, who pointed the canister at the officers and activated it. That the Defendants are not charged with conspiracy is of no moment. *United States v. Gbemisola*, 225 F.3d 753, 760 (D.C. Cir. 2000); *United States v. Rittweger*, 524 F.3d 171, 177-78 (2d Cir. 2008). Nor is the fact that most counts charge fewer than all defendants, and in some cases, only a single defendant. What matters is that Schwartz's, Brown's, and Maly's many actions during that sustained attack within a narrow, enclosed area and during a circumscribed time period amounted to their "participat[ion] in the … same series of acts …, constituting an offense or offenses." Rule 8(b). That substantial overlap in the charged conduct

triggers "the presumption and common practice [that] favor trying together defendants who are charged with crimes arising out of a common core of facts." *United States v. De La Paz-Rentas*, 613 F.3d 18, 23 (1st Cir. 2010).

Under the reasoning in *United States v. Slatten*, 865 F.3d 767 (D.C. Cir. 2017), the defendants' actions in and around the LWT Tunnel on January 6 at approximately 3:07 p.m. amounted to the "same series of acts constituting … offenses."  Defendants in *Slatten* were members of a team of military contractors, the "Raven 23" team, employed by Blackwater, a private security company.  In response to a car bombing in Baghdad on September 16, 2007, the team, traveling in four armored vehicles, went to a traffic circle near Nisur Square, the site of a previous car bombing.  Upon their arrival, the Raven 23 team, together with Iraqi police, stopped all traffic in the square.  Members of the team directed several gunshots at a white Kia sedan that had been "flagged" as the type of vehicle that might be used in a car bombing.  The gunshots wounded the driver, and an Iraqi police officer waived his arms in an attempt to stop the gunfire.  But the team members unleashed a heavy barrage of gunfire into the Kia, killing the passenger.  Indiscriminate gunfire by the team members then struck other areas of the square.  At least 31 Iraqis were killed or wounded during the altercation. *Id*. at 777-78.

Eight defendants were initially charged in this Court with offenses arising from the deadly shootings. D.D.C. 1:08-cr-00360.  Venue in this Court was invoked pursuant to 18 U.S.C. § 3238, which establishes venue for "offenses not committed in any district."  Under § 3238, venue for such offenses is proper in any district where, *inter alia*, any "joint offender" is arrested.  The government claimed that venue was proper in this Court because codefendant Jeremy Ridgeway voluntarily traveled to the District of Columbia, where he pleaded guilty to voluntary manslaughter. 865 F.3d at 786.

Four defendants went to trial; three were convicted of voluntary manslaughter, attempted manslaughter and using and discharging a firearm in relation to a crime of violence. A fourth, Nicholas Slatten, was convicted of first-degree murder. *Id*. at 778. On appeal, defendants claimed that venue was improperly laid in this Court under § 3238 because Ridgeway was not arrested here. *Id*. at 786. In rejecting that claim, the Court of Appeals noted that "Ridgeway was present in Nisur Square as a member of the Raven 23 convoy and … he fired at civilians to the south, to the west and finally to the north, *meaning he participated in the 'same series of acts or transactions' that gave rise to the prosecution pursuant to Rule 8(b)*." *Id*. at 788 (emphasis added). That was so even though Ridgeway was not charged with conspiracy and the shootings were a spontaneous reaction by the Raven 23 defendants to events quickly unfolding at Nisur Square, and even though each of the defendants did not join in all of the acts of his codefendants. *Id*. at 788. Here, as in *Slatten*, the Group Two Defendants engaged in the "same series of acts," when they reacted with coordinated violence in response to a quickly developing situation at the LWT Tunnel.

Schwartz's contention that the codefendants' "did not know each other" and therefore could not have collaborated, Schwartz's Motion at 4, is incorrect. Where defendants were acting together in the same small space at the same time to achieve the same goal, directly with one another, there is sufficient "commonality" in their conduct to satisfy the "same series of events" requirement of Rule 8(b), as there will be substantial overlapping evidence that applies to multiple defendants. *See United States v. Hubbard*, 474 F. Supp. 64, 87 (D.D.C. 1979) ("The predominant factor in the analysis of a joinder problem is the commonality of proof."). The lack of a charged conspiracy count is immaterial. An indictment need not "include a conspiracy charge or an allegation that each of the defendants aided and abetted one another in order to satisfy the joinder requirements under Rule 8(b)," even though "such allegations would likely simplify the analysis

under Rule 8(b)." *United States v. Melvin*, 143 F. Supp. 3d 1354, 1364 (N.D. Ga. 2015), *aff'd*, 918 F.3d 1296 (11th Cir. 2017). *See also United States v. Butera*, 677 F.2d 1376, 1385 n. 7 (11th Cir.1982) ("The absence of a conspiracy charge in the case before us is of no significance in the Rule 8(b) analysis.").

Schwartz's reliance on *United States v. Whitehead*, 539 F.2d 1023 (4th Cir. 1976), is misplaced. *See* Schwartz's Motion at 3-4. There, Whitehead was charged with a man named Jackson for jointly selling cocaine to an undercover DEA agent. Jackson was also charged with selling cocaine to an undercover agent together with Meredith. Jackson was tried separately, and Whitehead and Meredith were jointly tried after the district court denied their severance motions. The Fourth Circuit reversed, holding that "[w]here the only nexus between two defendants joined for trial is their participation in similar offenses, *on different dates*, with a common third defendant, the 'same transaction' or 'series of transactions' test of Rule 8(b) is not satisfied and joinder is impermissible." *Id*. at 1026 (emphasis added). Unlike this case, Whitehead and Meredith did not commit a core of factually related crimes on the same date and time and at the same location, so the abundant factual and logical nexus of the charges against Whitehead, on one hand, and Meredith, on the other, so prevalent here, were missing there. Schwartz's, meanwhile, is accused of handing a cannister of chemical spray directly to codefendant Maly, taking it back from different codefendant Brown, and then handing the cannister back to Brown who then used the spray on law enforcement. The nexus between the Schwartz and his codefendants in Count Seven of the Second Superseding Indictment is their joint participation of the same offense (and aiding and abetting that offense), on the same day, at the same time, at the same location, and against the same law enforcement officers. As even Schwartz's notes. "[E]ven dissimilar charges may be joined against multiple defendants if they arise out of the same series of transactions constituting an offense."

Schwartz's Motion at 4, citing *United States v. Satterfield*, 548 F.2d 1341, 1344 (9th Cir. 1977). Schwartz's objection to joinder under Rule 8(b) should be denied.

## II.     This Court Should Deny Schwartz and Brown's Rule 14 Severance Motions Because They Have Not Shown that a Joint Trial Would "Compromise a Specific Trial Right" or Prevent the Jury from Rendering a "Reliable Judgment."

Schwartz and Brown seek severance—and apparently believe they each should be tried alone—under Rule 14. They have fallen far short of meeting their burden to obtain a Rule 14 severance.

Defendants who are properly joined under Rule 8 "may seek severance under Rule 14, which provides that '[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.'" *United States v. Wilson*, 605 F.3d 985, 1015 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 14(a)).  But Rule 14 "does not require severance even if prejudice is shown," and district courts "should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *accord United States v. Bostick*, 791 F.3d 127, 152-53 (D.C. Cir. 2015) (cleaned up).  Often, "less drastic measures, such as limiting instructions, [ ] will suffice to cure any risks of prejudice."  *Zafiro*, 506 U.S. at 539.

Once multiple defendants are properly joined under Rule 8(b), "[d]istrict courts should grant severance" under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'" *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting *United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) (*en banc*)).  District courts retain "significant flexibility to determine

how to remedy a potential risk of prejudice, including ordering lesser forms of relief such as limiting jury instructions." *Bikundi*, 926 F.3d at 780 (cleaned up). *See generally United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021) (a joint trial is permissible "as long as the jury can reasonably compartmentalize the substantial and independent evidence against each defendant.") (cleaned up). Salient factors that militate against severance, all of which are present here, include whether separate trials would involve (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *See United States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989).

> a.    **Schwartz's Rule 14 Claims are Meritless.**

Schwartz contends severance is warranted because defendants Brown engaged in organizing and planning in anticipation of January 6, and Maly made extensive post-January 6th social media posts bragging about how "fun" the January 6th riot was.  Schwartz's contention that this information, if introduced at trial, would be prejudicial to Schwartz is anemic.  Before working with Brown and Maly to use a chemical spray against law enforcement, Schwartz is captured around 2:30 p.m. repeatedly spraying officers with his own cannister of pepper spray.  After arming Brown with spray, Schwartz joined the larger mob inside of the tunnel in attempting to push back officers who were holding the line at the entrance to the Capitol Building.  Schwartz and the mob of other rioters tried to use the weight of their combined bodies to push the officers back, trapping at least one officer in the process.  As Schwartz and the crowd lunged toward officers, they yelled, "Heave Ho!" and pushed against the police line. Twenty seconds later, Officer D.H. can be seen being crushed in the tunnel door as another rioter pushes a riot shield against the officer's body, rendering him unable to move.  Schwartz's is also accused is throwing a chair at law enforcement.

All three defendants stormed the Capitol and attacked the police officers defending the Tunnel doors. *See United States v. Williams*, 507 F. Supp. 3d 181, 196 (D.D.C. 2020) (denying Williams' motion for severance in prosecution for unlawful possession of a firearm, even though codefendant Douglas "was caught, on police body camera, wearing a backpack containing a gun and ammunition" and admitted he "had some idea about the contents of the backpack," whereas Williams "was not in possession of the backpack and "the government's Rule 404(b) evidence against Douglas is far stronger" than the 404(b) evidence against Williams; "even with these disparities in evidence, Williams has failed to meet his 'heavy burden' under Rule 14"); *El-Saadi*, 549 F. Supp. 3d at 169 (denying severance even though "the number of allegations against Khawaja, as the alleged hub of the second conspiracy, is far greater than against anyone else," where "El-Saadi's alleged participation in the second conspiracy is similar to the alleged roles of several other defendants"); *United States v. Eiland*, 406 F. Supp. 2d 46, 53 (D.D.C. 2005) (denying severance; "Disparity as to the violence alleged is generally only dispositive when it is combined with another factor, such as drastic differences in those charges."). Given Schwartz's particularly violent conduct, he fails to demonstrate how the evidence admitted specifically relating to Brown and Maly would prejudice Schwartz.

Schwartz argues that "there would be no judicial economy or efficiency in trying all counts together because it does not appear that any of the evidence relevant to Mr. Brown and Mr. Maly be relevant to Mr. Schwartz." (Schwartz's Motion at 6). This is incorrect. For starters, most if not all of the government's evidence in a joint trial will be admissible against all three defendants. Notably, evidence regarding the rally on the Ellipse before the riot, the proceedings before the Joint Session of Congress to certify the Electoral Congress election, the security measures taken by U.S. Secret Service and U.S. Capitol Police, and the actions of the mass of rioters who laid

siege to the Capitol Building and then breached its defenses, will consume a substantial portion of the trial and is relevant to the charges against all three defendants. *See United States v. El-Saadi*, 549 F. Supp. 3d 148, 166-69 (D.D.C. July 20, 2021) (Moss, J.) (denying severance where "several of the same witnesses are expected to testify with respect to both conspiracies"). Furthermore, much of the evidence will focus on the activities at the Lower West Terrace that will be directly relevant to each defendant, when it might not be relevant to other January 6 defendants.

Separate trials would result in the duplication of that evidence before multiple juries, squandering judicial resources. *See United States v. Wilson*, 216 F. Supp. 3d 566, 586 (E.D. Pa. 2016) (denying severance where the government "would need to offer duplicative testimony if the robberies were tried separately, as the same law enforcement officers and cooperating coconspirators would need to testify in both cases."), *aff'd*, 960 F.3d 136 (3d Cir. 2020); *see generally United States v. Bridgeman*, 523 F.2d 1099, 1107 (D.C. Cir. 1975) ("the incremental burden of duplicating a complex trial or reproducing elusive evidence is a proper consideration in the decision to deny severance"). Only evidence that is inadmissible against Schwartz would be excluded in a separate trial of him alone, and any such evidence he has identified is easily and clearly distinguishable. "Absent a *dramatic* disparity of evidence, any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant." *United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021) (cleaned up); *El-Saadi*, 549 F. Supp. 3d. at 167 ("The Court agrees with the government that limiting instructions, if necessary, can address any risk of prejudice related to the first conspiracy's foreign ties.").

The jury will also be called upon to make findings that will apply to all three defendants. For instance, all Defendants are jointly charged in Count Two with interfering with police who were engaged in suppressing a civil disorder, in violation of 18 U.S.C. § 231(a)(3). In resolving

those charges, the jury must decide whether a "civil disorder" occurred at the Capitol on January 6 and whether police officers were engaged in the lawful discharge of their duties. *See* 18 U.S.C. § 231(a)(3).   The term "civil disorder" is defined as any public disturbance "involving acts of violence by assemblages of three or more persons."  18 U.S.C. § 231(1).  Once cannot engage in a civil disorder by himself: that activity, like a conspiracy, requires multiple people.  Schwartz was not acting alone or with a small group of rioters, but rather with many others when attacking the police lines.  This makes it more likely that he participated in a multi-person civil disorder and intended to obstruct the certification vote.  It is also relevant to prove that he intended to disrupt the officers' discharge of their official duties in response to a civil disorder, in violation of 18 U.S.C. § 231(a)(3).  Put another way, if the government was limited to presenting evidence only of Schwartz's individual conduct at a separate trial of the charges against him, it would be unfairly hamstrung in proving the element of the "civil disorder" element of the § 231(a)(3) count.

With respect to those issues and many others, the government will present a host of witnesses who would have to testify repeatedly in the event of severed trials. As noted above, some of the officers were victims of multiple assaults by different defendants and so would have to testify in multiple trials in the event of severance.  Likewise, the same video evidence that captured assaults committed by multiple defendants would have to played over and over in multiple trials. The efficiency gained by avoiding the duplication of testimony is a significant benefit of joint trials. *See Slatten*, 865 F.3d at 788 ("in order to convict Ridgeway, the government would be required to present the same evidence and to rely upon testimony from the same witnesses as they would for the other defendants.").

b. **Brown's Rule 14 Claims are Meritless.**

Brown likewise contends he is entitled to severance because his conduct was less egregious than that of all his codefendants, including Schwartz's alleged use of a chair against law enforcement and Maly's use of pepper spray on law enforcement unrelated to Brown's own alleged acts. since supposedly all he did was to jam a riot shield into a door to prevent it from closing. KM at 4-5.

That the evidence will prove that some of Brown's codefendants engaged in some criminal conduct that he did not join is a manifestly insufficient basis for Rule 14 severance. *See Straker*, 800 F.3d at 626 (affirming denial of severance even though defendant participated in a kidnapping but was not involved in the victim's death); *Celis*, 608 F.3d at 844-45 (affirming denial of Giraldo's severance motion in prosecution for drug-trafficking, even though he, unlike co-defendant Valderama, was not a member of FARC, a violent revolutionary group that committed atrocities; even if the FARC evidence would have been excluded from a trial against Giraldo alone, "it does not follow that the jury was incapable of fairly assessing Giraldo's guilt"); *United States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006) (affirming denial of Rios' severance motion, even though "the bulk of the trial evidence concerned Mejia rather than" Rios, where the government "introduced 'independent and substantial evidence' against Rios").

This is not a case where the evidence against Brown will be significantly less damning than that against his two codefendants. As Judge Lamberth explained, to "warrant severance as a remedy, there must be *a great disparity in evidence*, and the disparity must create a viable possibility that the jury, even with the aid of curative instructions and appropriate *voir dire*, will be unable to compartmentalize the evidence between defendants or will be impeded in their duty

to render a fair assessment of guilt or innocence." *United States v. Gray*, 173 F. Supp. 2d 1, 15 (D.D.C. 2001), *aff'd sub nom. United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011).[2]

Nor is this a case where the jury will be unable to compartmentalize the evidence against Brown from that against his codefendants.  Brown's Motion at 4.  Much of the evidence, and the most compelling evidence, the government will present will be the videos of each defendant's conduct in or near the LWT Tunnel on January 6.  "Because each defendant's actions are rendered on video, a jury need not 'look beyond each defendant's own" actions to judge guilt or innocence." *United States v. McCaughey, et al.*, No. 21-cr-40 (D.D.C. May 20, 2022) (McFadden, J.) (Memorandum Order Denying Motion to Sever), ECF No. 290, at 8 (citing *United States v. Celis*, 806 F.3d 818, 846 (D.C. Cir. 2010) (cleaned up)).  None of the defendants were dressed substantially alike, nor do they look alike, so there is little chance the jury will be confused about which defendant engaged in which conduct.  *See Straker*, 800 F.3d at 626 ("substantial and independent evidence against Sealey and Straker enabled the jury to reasonably compartmentalize the evidence of guilt against each of them from the rest of the evidence at trial").  As for evidence showing Brown's codefendants, but not Brown, engaged in criminal conduct, Brown can readily point out his absence from those videos. *See El-Saadi*, 549 F. Supp. 3d at 167 ("the defense can highlight … that there is no evidence El-Saadi knew about the agreement between Khawaja and Nader").

---

[2] Such a great disparity occurred in *United States v. Sampol*, 636 F.2d 621, 645-47 (D.C. Cir. 1980) a prosecution for conspiracy to assassinate the former Chilean Ambassador to the United States. The charges against Sampol were limited to making false statements to a grand jury and misprision of a felony. The D.C. Circuit held that those charges should have been severed from those against a defendant directly involved in the murder because they were "grossly disparate" with the murder charges, but at trial, "[t]here was never [a] clear distinction between the different defendants and the evidence against each of them." *Id.* at 645-47. No such great disparity exists here: all three defendants are charged with substantially similar crimes. *See Straker*, 800 F.3d at 627 (distinguishing *Sampol*).

Neither Schwartz nor Brown has satisfied their daunting burden to obtain a Rule 14 severance.

## **CONCLUSION**

For the foregoing reasons, defendants' Schwartz and Brown's motions to transfer sever should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: _Stephen J. Rancourt_
Stephen J. Rancourt
Texas Bar No. 24079181
Assistant United States Attorney, Detailee
601 D Street, NW
Washington, D.C. 20530
(806) 472-7398
stephen.rancourt@usdoj.gov