UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-178 (APM) |
| v. : | |
| : | |
| PETER J. SCHWARTZ, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT PETER J. SCHWARTZ'S MOTION TO DISMISS COUNT EIGHT OF THE SECOND SUPERSEDING INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the defendant's Motion to Dismiss Count Eight of the Second Superseding Indictment: Obstruction of an Official Proceeding. The defendant's motion should be denied because the certification of the Electoral College Vote—which is required by the Constitution and governed by precise statutorily prescribed requirements—is an official proceeding as contemplated by the obstruction statute and his alleged conduct falls within the scope of the congressional obstruction prohibition in 18 U.S.C. § 1512(c)(2).

## PROCEDURAL HISTORY

On February 29, 2022, the Grand Jury returned a second superseding indictment charging the defendant, Peter J. Schwartz, along with co-defendants Jeffrey Scott Brown, Markus Maly, and Shelly Stallings[1], with various offenses as a result of their conduct at the United States Capitol on January 6, 2021. Schwartz, Brown, Maly, and Stallings are charged jointly with the following

---

[1] Stallings has pled guilty to the second superseding indictment and her sentencing is scheduled for January 13, 2023.

offenses: civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 2); assaulting, resisting, or impeding certain officers using a dangerous weapon and aiding and abetting, in violation of 18 U.S.C. §§ 111(a)(1) and (b) and (2) (Count 7);  entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Count 9); disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count 10); engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Count 11); disorderly conduct in the capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 12); and act of physical violence in the capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count 13). Schwartz is charged separately with three additional counts of assaulting resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) (Counts 1, 3, and 4), as well as obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and (2) (Count 8).

On August 30, 2022, the defendant filed a motion to dismiss Count Eight of the second superseding indictment, ECF No. 63, which charges him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2).  For the reasons stated below, the defendant's motion is without merit and should be denied.

## **LEGAL STANDARD**

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  However, the Federal Rules of Criminal Procedure state that an indictment is only required to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).  "An

indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed." *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017). Because pretrial dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F. 3d 138, 148 (D.C. Cir. 2015) (internal quotation marks omitted). Ultimately, the court must decide "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Bowdoin*, 770 F. Supp 2d 142, 146 (D.D.C. 2011).

## ARGUMENT

### I. The certification of the Electoral College vote is an official proceeding

Schwartz first argues that the Electoral College certification before Congress does not constitute an "official proceeding" under 18 U.S.C. 1512(c)(2). Defendant's Motion at 2. He argues that the proceeding is "judicial" or "quasi-judicial" in nature, and that in order to fall under section 1512, Schwartz's obstruction must relate to "a Congressional hearing affecting the administration of justice." *Id*. at 3, 6. This argument lacks merit, and this Court, in a separate case, agrees. *See United States v. Caldwell*, No. 21-cr-28, ECF No. 558, Memorandum Opinion and Order denying motion to dismiss count charging 1512 (D.D.C. December 20, 2021) (Mehta, J.) (rejecting the narrow reading that the certification of the Electoral College is not an "official proceeding" under Section 1512(c)(2).

Response to Defendant's Motion to Dismiss
Page 3

### A. Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding. 18 U.S.C. § 1512(c)(2). An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

> (B) *a proceeding before the Congress*;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

### B. Certification of the Electoral College vote is a proceeding before the Congress

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That conclusion flows principally from the obstruction statute's plain text. Skipping past the text, the defendant argues that Congress's intent and other language in the obstruction statute import a "quasi-judicial" requirement into the term "official proceeding." That argument is incorrect, but even if it were, it would not disqualify the Electoral College vote certification. The defendant's remaining arguments—that his interpretation finds support in other cases, and that interpreting the Electoral College vote certification as a "proceeding before the Congress" renders other statutes superfluous—are similarly flawed.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). The

Response to Defendant's Motion to Dismiss
Page 5

defendant does not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding—under that broad definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because

the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1 pm on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding

officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id*. In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).

### C. Schwartz's Reliance on the legislative history of the Sarbanes-Oxley Act is misplaced

The defendant further argues that "when considering [the Sarbanes-Oxley] Act's preamble and legislative history, it is clear that Section 1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice and was not intended to apply to all circumstances where any government function may have been impeded." Defendant's Motion at 8. He describes how other statutes contained in Chapter 73, including Section 1510 (obstruction of criminal investigations) 1516 (obstruction of a federal audit. 1517 (obstruction of examination of a financial institution) and 1518 (obstruction of investigation of health care offenses) specifically relate to the obstructive conduct related to the administration of justice. *Id*. at 6-7. Therefore, Schwartz argues, the legislative intent of the words "official proceeding" in 1512(c)(2) could only have been meant to apply to federal hearings related to the administration of justice, and not other functions of Congress.

Schwartz's argument falls flat. "[A] proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B) should encompass only "a congressional investigation or an impeachment." But Section 1505, also part of the Sarbanes-Oxley Act from which 1512 is derived, expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States*

*v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress could limit the obstruction prohibition under Section 1505 to congressional investigations, it could have done so in the text of Section 1515(a)(1)(B). But it did not. Instead, Congress enacted broader language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. That broader definition includes the Electoral College vote certification.

Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. And to the extent that "before" refers to "some formal convocation of the agency in which parties are directed to appear," *see United States v. Young*, 916 F.3d 368, 384 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 113 (2019), the certification of the Electoral College vote involves a "formal convocation" of Congress to assess the Electoral College vote and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.

Schwartz's argument that certification of the Electoral College vote is not an "official proceeding" because it does not perform a "quasi-judicial function" fails in three additional respects. First, it is methodologically flawed. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, a proceeding before the Congress. Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168,

1177 (2020) (internal quotation marks omitted). The defendant offers no rationale for breezing past the statute's plain text to reach for other interpretive tools.

Second, the other statutory tools on which the defendant purports to rely do not aid his argument. Putting aside that the "best evidence of [a statute's purpose] is the statutory text adopted by both Houses of Congress and submitted to the President," *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991), the obstruction statute's legislative history in fact underscores that Congress intended official proceeding to reach "broadly," and to encompass "the rare type of conduct that is the product of the inventive criminal mind." S. Rep. No. 97-532, at 17-18.

Lastly, the defendant's narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—in essence, importing Schwartz's extra-textual "quasi-judicial" requirement—would undercut the broad statute that Congress enacted. In the defendant's view, for example, an individual who threatened a Senator and a Representative with injury unless each agreed to object to the Electoral College certification—even though each Member knew that the objections were frivolous—would not amount to obstruction. Nor would it appear to cover an individual who paid one of the tellers—who are appointed by the Senate and House of Representatives to handle the Electoral College votes—to falsify or destroy votes. That crabbed approach fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes." *Sutherland*, 921 F.3d at 426. Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, the Electoral College vote certification falls well within them.

The defendant's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding

must be "quasi-judicial" or "quasi-adjudicative."  Far from being "quasi-judicial," the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding.  It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]."  3 U.S.C. § 15.  That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  *Id*.  And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

The defendant relies heavily on *Ermoian* to advance his narrow reading of what constitutes an "official proceeding" under 1512.  *See* Defendant's Motion at 1, 4-5.  That case addresses an entirely different question, namely, whether law enforcement investigations qualified as "official proceedings" under a subsection defining that term as a "proceeding before a Federal Government agency which is authorized by law."  18 U.S.C. § 1515(a)(1)(C).  To the extent courts have therefore struggled with questions about what constitutes an "official proceeding," other decisions, including ones out of this Circuit, have affirmed convictions under 1512.  *See United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (preliminary inquiries of Inspector General of USAID was a proceeding for purposes of 18 U.S.C. § 1505); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (investigation of BOP corrections officers regarding assault on an inmate was an official proceeding under § 1512 and 1515(a)(1)(C); investigation was "sufficiently formal" where investigators "had to make findings and decide whether to refer the matter to senior BOP officials).

**Response to Defendant's Motion to Dismiss**
**Page 11**

More importantly, in the context of the January 6, 2021, Capitol riot, motions to dismiss charges under 1512 have been brought before nearly every District Judge, including this Court. With one exception, courts have overwhelmingly ruled in favor of the government's interpretation and dismissed challenges to the Obstruction charge. *See, e.g.*, *United States v. Caldwell*, No. 21-cr-28, Memorandum Opinion and Order denying motion to dismiss count charging 1512 (D.D.C. December 20, 2021) (Mehta, J.) (rejecting the narrow reading that the certification of the Electoral College is not an "official proceeding" under Section 1512(c)(2); *United States v. Hughes*, No. 21-cr-106, Minute Order denying motion to dismiss count charging Section 1512 (D.D.C. May 9, 2022) (Kelly, J.); *United States v. Hale-Cusanelli*, No. 21-cr-37, Transcript of Motion to Dismiss hearing at 4-8  (D.D.C. May 6, 2022) (McFadden, J.); *United States v. Reffitt*, No. 21-cr-88, 2022 WL 1404247, at *7-*10 (D.D.C. May 4, 2022) (Friedrich, J.);  *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *2-*13 (D.D.C. May 2, 2022) (Bates, J); *United States v. Bingert, et al.,* No. 21-cr-91 (D.D.C. May 25, 2022) (Lamberth, J.); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684 at *2-*17 (D.D.C. March 14, 2022) (Contreras, J.); *United States v Montgomery*, No. 21-cr-46, 2021 WL 6134591 at *1-*24 (D.D.C. December 28, 2021) (Moss, J.);  *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891 at *9-*12 (D.D.C. December 21, 2021) (Boasberg, J.); *United States v. Puma*, No. 21-cr-454, 2022 WL 823079 at *3-13 (D.D.C. March 19, 2022) (Friedman, J.); *United States v. Grider*, No. 21-cr-22, 2022 WL 61392307 at *3-*8 (D.D.C. February 9, 2022) (Kollar-Kotelly, J.) *but see United States v. Miller*, No. 21-cr-119 (D.D.C. March 7, 2022) (Nichols, J.) (Memorandum Opinion dismissing 1512 Count).[2]

---

[2] The government has filed an interlocutory appeal in this case, and the appeal is currently pending. Case No. 1:21-cr-119-CJN, ECF No., 88; D.C. Cir. Case No. 22-3041.

## II. Schwartz's reliance on a version of the Justice Manual that predates Section 1512(c)(2) is fatally flawed

Schwartz's assertion that his interpretation of 1512(c)(2) "is even consistent with the Department of Justice's own interpretation as reflected in their Criminal Resource Manual," Defendant's Motion at 8, is both logically and chronologically impossible. The section of the Manual that Schwartz invokes was last published in 1997. *See* Department of Justice, United States Attorneys' Manual & Resource Manual Archives (hereinafter, "DOJ, Resource Manual Archives"), at https://www.justice.gov/archive/usao/usam/index.html ("1997 - Criminal Resource Manual"). Schwartz cites to Section 1729 of the Manual[3] – a section that was published *before* Section 1512(c) was enacted in 2002. Section 1512(c) is not mentioned anywhere in Section 1729 of the Manual, and instead, discusses provisions of 1512 that were subsequently moved to different subsections.[4]

The defendant's invocation of the Justice Manual is a red herring. The USAM (the previous name of the Justice Manual) "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *United States v. Goodwin*, 57 F.3d 815, 818 (9th Cir. 1995) (quoting USAM §1-1.100). *Cf. United States v. Caceras*, 440 U.S. 741, 754 (1979) (IRS manual does not confer any substantive rights on taxpayers but is instead only an internal statement of penalty policy and philosophy). As this Court has previously noted, the Criminal Resource Manual (previously the Justice Manual), contains only *internal* DOJ guidance, and "as its name implies, merely a *resource*

---

[3] Section 1729 is archived at https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or. The bottom of the page indicates that it was "updated January 17, 2020," but that appears to be the date it was archived.

[4] For instance, the first paragraph of Section 1729 of the Manual references Section 1512(g), which discusses extraterritorial jurisdiction. In 2002, subsection (g) was moved to subsection (h). *See* Pub. L. 107-204, § 1102(1) (2002).

Response to Defendant's Motion to Dismiss
Page 13

manual. *United States v. Caldwell, et al.*, Case No. 1:21-cr-00028-APM, ECF No. 313, at 19. Defendant's reliance on an outdated, internal DOJ document which does not address the scope of obstructive conduct criminalized under 1512(c) should have no bearing on this Court's analysis.

### III.  Schwartz's conduct falls within the scope of Section 1512(c)(2).

Finally, Schwartz contends that his conduct does not fall within the scope of Section 1512(c)(2) under the reasoning in *United States v. Miller*, No. 21-cr-119, 2022 WL 823070 (D.D.C. Mar. 7, 2022). This Court has already disagreed with *Miller*'s reasoning in *Caldwell*, and *s*o has every other judge of this Court to have considered the issue. *See, e.g.*, *United States v. McCaughey et al.*, No. 21-cr-40, ECF No. 388 at 2 (D.D.C. July 20, 2022) (McFadden, J.) (rejecting defendants' argument premised on *Miller* and observing that "*Miller* has also persuaded no other judge on this question"); *United States v. Robertson*, No. 21-cr-34, 2022 WL 2438546, at *3-*5 (D.D.C. July 5, 2022) (Cooper, J.); *United States v. Williams*, No. 21-cr-618, 2022 WL 2237301, at *17 n.13 (D.D.C. June 22, 2022) (Berman Jackson, J.); *United States v. Fitzsimons*, No. 21-cr-158, 2022 WL 1698063, at *6-*12 (D.D.C. May 26, 2022) (Contreras, J.); *United States v. Bingert*, No. 21-cr-91, 2022 WL 1659163, at *7-*11 (D.D.C. May 25, 2022) (Lamberth, J.); *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *2-*13 (D.D.C. May 2, 2022) (Bates, J.); *United States v. Puma*, No. 21-cr-454, 2022 WL 823079, at *12 n.4 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Grider*, No. 21-cr-22, 2022 WL 392307, at *5-*6 (D.D.C. Feb. 9, 2022) (Kollar-Kotelly, J.); *United States v. Nordean*, No. 21-cr-175, 2021 WL 6134595, at *6-*8 (D.D.C. Dec. 28, 2021) (Kelly, J.) *United States v. Montgomery*, No. 21-cr-46, 2021 WL 6134591, at *10-*18 (D.D.C. Dec. 28, 2021) (Moss, J.); *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021) (Boasberg, J.); *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718, at *11-*21 (D.D.C. Dec. 20, 2021) (Mehta, J.); *United States v.*

*Sandlin*, No. 21-cr-88, 2021 WL 5865006, at *5-*9 (D.D.C. Dec. 10, 2021) (Friedrich, J.). Schwartz offers no sounds reason to deviate from this broad consensus.

Section 1512(c)(2)'s verbs plainly cover conduct that blocks or interferes with an official proceeding, and the contrasting language in Section 1512(c)'s subsections clarifies that while Section 1512(c)(1) covers destruction of documents, records, and other objects used in a proceeding, Section 1512(c)(2) covers other obstructive behavior that targets the proceeding directly. That straightforward construction of Section 1512(c)(2) aligns with the interpretation of similar verbs in other obstruction provisions, *see* 18 U.S.C. §§ 1503, 1505, and the interpretation of every court of appeals to have considered Section 1512(c)(2).

The term "otherwise" in Section 1512(c)(2) further illustrates that it applies to "other," non-document-related obstruction, and, as such, ensures coverage of additional types of corrupt conduct that impedes an official proceeding. The *Miller* court's contrary conclusion disregards that straightforward construction and instead places undue emphasis on the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), where the Court adopted a less common and context-dependent interpretation of "otherwise" in a statute structurally and grammatically unlike Section 1512(c). Nor do statutory canons or Section 1512(c)(2)'s legislative history support the *Miller* court's unintuitive interpretation.[5]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the defendant's motion be denied.

---

[5] An interlocutory appeal of *Miller* and two other cases in which Judge Nichols dismissed counts charging violations of Section 1512(c)(2) is currently pending before the court of appeals. The government's opening brief explains in detail why the reasoning in *Miller* is flawed. *See* Brief for Appellant, *United States v. Fischer et al.*, Nos. 22-3038, 22-3039, & 22-3041 (D.C. Cir.), at 16-59 (filed Aug. 8, 2022).

**Response to Defendant's Motion to Dismiss**
**Page 15**

                                                 Respectfully submitted,
                                                 MATTHEW M. GRAVES
                                                 United States Attorney
                                                 D.C. Bar Number 481052

By: _____
                                               Stephen J. Rancourt
                                               Texas Bar No. 24079181
                                               Assistant United States Attorney, Detailee
                                               601 D Street, NW
                                               Washington, D.C. 20530
                                               (806) 472-7398
                                               stephen.rancourt@usdoj.gov