## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Criminal No. 21-cr-178-APM** |
| | : | |
| PETER SCHWARTZ, | : | |
| | : | |
| Defendant. | : | **Trial:  November 22, 2022** |

## UNITED STATES' RESPONSE TO DEFENDANT PETER SCHWARTZ'S SUPPLEMENT TO MOTION TO SUPPRESS

In a supplement to his suppression motion (ECF No. 149), Defendant Peter J. Schwartz contends that law enforcement violated his Fifth Amendment right against self-incrimination when (as authorized by the search warrant) an agent obtained Schwartz's fingerprint to unlock his cell phone.  That contention lacks merit.  Because the agent's action did not compel a testimonial communication, the Fifth Amendment privilege is not implicated and does not provide a basis to grant Schwartz's motion to suppress.

### Factual  Background[1]

On February 4, 2021, FBI agents executed an arrest warrant at Schwartz's home in Uniontown, Pennsylvania.  Agents arrested and handcuffed Schwartz, placed him into a law-enforcement vehicle, and advised him of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

---

[1] The government's factual summary incorporates the testimony of FBI Special Agent Michael Nealon at the evidentiary hearing on October 21, 2022 and the eight exhibits admitted during that hearing: the arrest-warrant return for Schwartz (Ex. 1); the search warrant for Schwartz's residence, including for digital devices, signed on February 4, 2021 (Ex. 2); a diagram of Schwartz's residence (Ex. 3); a photograph of the dresser on which Schwartz's phone was found (Ex. 4); a close-up photograph of Schwartz's phone (Ex. 5); Schwartz's phone (Ex. 6); the evidence-collection log (Ex. 7); and the second search warrant for Schwartz's devices and associated affidavit, signed on September 16, 2021 (Ex. 8).

Schwartz verbally agreed to speak to agents without a lawyer present.   During that conversation, Schwartz discussed his presence at the U.S. Capitol on January 6, 2021.

Agents also conducted a warrant-authorized search of Schwartz's home.  The warrant, issued by a magistrate judge in the Western District of Pennsylvania, authorized agents to seize Schwartz's communication and digital devices.  *See* Ex. 2 (Att. B. ¶¶ 1m, 8, 9).  The warrant further authorized "law enforcement personnel … to obtain from Schwartz … the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any Device(s) requiring such biometric access subject to seizure pursuant to this warrant."  *Id*. (Att. B. ¶ 9) (capitalization omitted).

During the search, agents seized a black Samsung phone on a bedroom dresser. Consistent with the warrant, Agent Nealon approached Schwartz as he spoke to another agent and asked Schwartz for the password to his phone.[2]  In response, Schwartz voluntarily provided three passwords, none of which allowed Agent Nealon to open the phone.  (Agents memorialized these passwords on the scene.)  Schwartz then continued the interview.

The agent conducting the questioning then confronted Schwartz with photographs of Schwartz at the U.S. Capitol.  At that juncture, Schwartz asked for an attorney.  The agent terminated the interview and left the vehicle.

Around the same time, Agent Nealon returned to the vehicle for the purpose of obtaining Schwartz's fingerprint to open the phone.  In this setting, Agent Nealon's usual practice involves approaching the individual with the phone and asking that person to unlock

---

[2] Agent Solomon (who questioned Schwartz) does not recall the precise point in the conversation when Agent Nealon approached but is certain that it occurred after Schwartz was advised of his *Miranda* rights.

the phone by offering to get any phone numbers or other information he or she may need. Nealon believed he followed this practice with Schwartz. Schwartz then used his fingerprint to open the phone.[3] Agents conducted a cursory search of the phone and photographed text messages on the phone related to Schwartz's presence at the U.S. Capitol on January 6.

After the initial on-scene search, the FBI did not conduct an immediate forensic extraction of the phone's contents; it was instead placed into evidence. In September 2021, out of an abundance of caution, the FBI sought a second warrant authorizing the search of Schwartz's phone. The warrant affidavit described the seizure of the phone on February 4, 2021, explained that it was initially unlocked using Schwartz's fingerprint, and included screenshots of specific text message seen in the initial cursory search of the phone. Ex. 8 (Aff. ¶¶ 30-41).

After Magistrate Judge Faruqui signed this search warrant, the phone was transferred to Special Agent Ryan Lamb with the FBI Computer Analysis Response Team for the forensic extraction. Although Agent Nealon had initially unlocked the phone on February 4, 2021 using Schwartz's fingerprint, the phone had again locked. Upon receiving the phone, Lamb successfully utilized one of the passwords provided by Schwartz to Nealon on February 4 to unlock the phone. Although Nealon had been unable to open the phone with those passwords, Lamb did so with a different combination of lowercase and capital letters. Lamb then completed the forensic extraction of Schwartz's phone.

On August 30, 2022, Schwartz filed a motion to suppress, claiming that law enforcement had neither a warrant nor consent to search the defendant's phone. The

---

[3] Agents Nealon and Solomon could not recall whether this interaction occurred before or after Schwartz requested an attorney.

government opposed the motion on the grounds that there was a valid warrant to seize and search the phone and the warrant specifically permitted the *compelled* display of biometric data to open the phone. Following an evidentiary hearing on October 21, 2021, Schwartz raised an additional ground for suppression. He argued that, even if permitted by the warrant, the compelled use of his fingerprint to open his phone violated his Fifth Amendment privilege against self-incrimination because biometric data is "testimonial" in nature.[4]

### Argument

The Court should reject Schwartz's contention that the compelled use of his fingerprint to open his cell phone (as authorized by the search warrant) violated his Fifth Amendment privilege against self-incrimination. Because this fingerprint collection did not involve a testimonial act, it did not implicate the privilege. Independent of that question, suppression of the phone's contents would be inappropriate because the FBI acted in good faith and the forensic examiner had an independent source for accessing the phone's contents.

**A.    The FBI agent's collection of Schwartz's fingerprint did not violate the Fifth Amendment privilege.**

The Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character." *United States v. Hubbell*, 530 U.S. 27, 34 (2000). As the Supreme Court has explained, "there is a significant difference between

---

[4] In his supplemental filing, Schwartz raises additional factual issues that were not presented in his initial motion and, thus, not addressed during the evidentiary hearing. If the Court deems it necessary to reopen the evidentiary hearing, the government will call additional witnesses to address the newly raised factual issues.

the use of compulsion to extort communications from a defendant and compelling a person to engage in conduct that may be incriminating." *Id.* at 34-35.

Following that principle, "[i]t has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination." *United States v. Dionisio*, 410 U.S. 1, 5-6 (1973). The government may accordingly "compel[]" "a criminal suspect … to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice" notwithstanding the fact that "the act may provide incriminating evidence" against him. *Hubbell*, 530 U.S. at 35 (footnotes omitted). The reason is simple. "[T]he act of exhibiting such physical characteristics is not the same as a sworn communication by a witness that relates either express or implied assertions of fact or belief." *Id.*

The same is true here: "the [Fifth Amendment] privilege offers no protection against compulsion to submit to fingerprinting." *Dionisio*, 410 U.S. at 6 (quoting *Schmerber v. California*, 384 U.S. 757, 764 (1966)) (brackets omitted). Requiring a suspect to display his fingerprint, just like requiring the suspect "to use his voice," involves only the compelled display of "an identifying physical characteristic." *United States v. Wade*, 388 U.S. 218, 222-223 (1967). And compulsion of "an identifying physical characteristic … is outside [the Fifth Amendment privilege's] protection." *Gilbert v. California*, 388 U.S. 263, 267 (1967).

The D.C. Circuit has recognized the same distinction: "The Fifth Amendment privilege bars only compelling testimonial communications from an accused, not making the accused a source of physical evidence." *Kaemmerling v. Lappin*, 553 F.3d 669, 685 (D.C. Cir. 2008). "[C]ompulsion which operates upon the mind by forcing the accused to communicate information or testimony" thus trenches on the privilege; "compulsion which merely requires

him to produce his body for inspection" does not. *United States v. Hubbell*, 167 F.3d 552, 573 (D.C. Cir. 1999). For that reason, the D.C. Circuit has long held that compelling a suspect's "exposure to view, *like fingerprinting* …, is not proscribed." *Kennedy v. United States*, 353 F.2d 462, 466 (D.C. Cir. 1965) (emphasis added).

These decisions resolve the present dispute. The FBI agent's action requiring Schwartz's production of his fingerprint did not implicate the Fifth Amendment because the agent's action involved no compelled *testimonial* act by Schwartz. "[I]t required no act of will on his part as to what he would communicate." *Hubbell*, 167 F.3d at 574.

In response, Schwartz asserts (ECF No. 149, at 6) that the use of his fingerprint was testimonial because the successful scan confirmed that "he d[id] in fact possess this cellular device and that the contents of said device c[ould] be attributed to him." That contention lacks merit. An act is "testimonial" when it involves a "communication by a witness that relates either express or implied assertions of fact or belief." *Hubbell*, 530 U.S. at 35. But forcing a suspect to "exhibit[] … physical characteristics" like fingerprints does not compel the suspect to divulge the contents of his mind. *Ibid*.

Of course, the FBI agent's compelled production of Schwartz's fingerprint generated an incriminating fact—namely, confirmation that Schwartz possessed and used the phone. But the same can be said of compelling a suspect to put on a shirt to see whether it fits him, to provide a blood sample to see whether it matches stains on the murder weapon, or to provide a handwriting exemplar to see if it matches the signature on a bank check. These compelled displays "may provide incriminating evidence" regarding the suspect's possession or control over the shirt, weapon, or bank check, but the Supreme Court has held that they

are not "testimonial" for purposes of the Fifth Amendment privilege. *Hubbell*, 530 U.S. at 34–35. The same is true here.

Schwartz further cites (ECF No. 149, at 5-6) two out-of-circuit magistrate orders and one district court decision holding that the compelled production of a fingerprint or other biometric feature constitutes a testimonial act. *See United States v. Wright*, 431 F. Supp. 3d 1175, 1187-88 (D. Nev. 2020); *Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010, 1015-1016 (N.D. Cal. 2019); *In re Application for a Search Warrant*, 236 F. Supp. 3d 1066, 1073 (N.D. Ill. 2017). None is persuasive. The Northern District of California and District of Nevada decisions cannot be squared with extant Ninth Circuit authority. *See Commonwealth of N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1120 n.5 (9th Cir. 2001) ("Requests by the prosecution for … fingerprint evidence from a defendant or a suspect are not prohibited by the Fifth Amendment right against self-incrimination because such evidence is not testimonial in nature.").[5] And the district court subsequently reviewed and rejected the magistrate judge's ruling in the Northern District of Illinois case. *See In re Search Warrant Application*, 279 F. Supp. 3d 800, 804 (N.D. Ill. 2017) ("The application of the fingerprint to the sensor is simply the seizure of a physical characteristic, and the fingerprint by *itself* does not communicate anything."). In any event, these decisions do not bind this Court and cannot circumvent the case law cataloged above.[6]

---

[5] The government challenged these holdings as incorrect, but the reviewing courts found it unnecessary to address the Fifth Amendment dispute. *See United States v. Wright*, 2022 WL 67341 (9th Cir. Jan. 6, 2022); *In re Search of a Residence in Oakland, California*, 2019 WL 6716356 (N.D. Cal. Dec. 10, 2019).

[6] Schwartz separately criticizes (ECF No. 149, at 7) Magistrate Judge Harvey's decision in this District holding that "the government's compelled use of the Subject's biometric features in order to decrypt the contents of the Subject Devices will not require the Subject to make any use of the contents of his mind." *In re Search of [Redacted] Washington,*

Applying that authority leaves only one conclusion: the compelled production of Schwartz's fingerprint in this case was a non-testimonial act and did not trigger the Fifth Amendment privilege.

**B.    The good-faith exception and the independent-source doctrine separately prohibit suppression.**

Even if the compelled production of Schwartz's fingerprint violated the Fifth Amendment, the good-faith exception and the independent-source doctrine foreclose application of the exclusionary rule to that violation.

1.     The exclusionary rule is a "'judicially created remedy'" that is "designed to deter police misconduct." *United States v. Leon*, 468 U.S. 897, 906, 916 (1984) (citation omitted).  The Supreme Court has explained that in order to justify suppression, a case must involve police conduct that is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" in suppressing evidence.  *Herring v. United States*, 555 U.S. 135, 144 (2009); *see Davis v. United States*, 564 U.S. 229, 236-239 (2011).

To that end, a search conducted in objectively reasonable reliance on a prior precedent of the governing court of appeals is "not subject to the exclusionary rule," even if that precedent is subsequently overturned, because "suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety." *Davis*, 564 U.S. at 232.

That is precisely what occurred here.  The FBI obtained a warrant authorizing the seizure and search of phones discovered at Schwartz's residence in Uniontown, Pennsylvania.

---

*DC*, 317 F. Supp. 3d 523, 538 (D.D.C. 2018); For the reasons explained above, Judge Harvey's decision reflects a correct application of Fifth Amendment case law.

The authorization included the compelled production of Schwartz's fingerprint to obtain access to any phone. In the Third Circuit, both at the time of the search and today, "the obtaining of fingerprints does not violate the privilege against self incrimination." *Beightol v. Kunowski*, 486 F.2d 293, 294 (3d Cir. 1973); *see also United States v. Carvajal-Garcia*, 54 F. App'x 732, 739 (3d Cir. 2002) ("[F]ingerprints are nontestimonial evidence."). Because the FBI agents' conduct in compelling Schwartz's fingerprint conformed to appellate precedent, the exclusionary rule does not apply.

That is doubly true in this case because the FBI agents did not act unilaterally. They instead obtained a warrant from a magistrate judge in the Western District of Pennsylvania authorizing them to compel Schwartz's production of his fingerprint. *See* Ex. 2 (Att. B. ¶ 9). And later, the FBI presented a search-warrant application in this District that fully disclosed the fingerprint production and requested authorization to conduct a forensic extraction of the phone. *See* Ex. 8 (Aff. ¶ 33). Magistrate Judge Faruqui issued a warrant authorizing that search. "There was … nothing more that [FBI agents] could have or should have done under these circumstances to be sure [their] search would be legal." *United States v. McClain*, 444 F.3d 556, 566 (6th Cir. 2005) (internal quotation marks and citation omitted); *see id.* (observing that the warrant affidavit fully disclosed the circumstances surrounding the disputed initial warrantless search to a neutral and detached magistrate). These good-faith efforts to obtain judicial authorization for the compelled fingerprint production and for the forensic search of Schwartz's phone preclude application of the exclusionary rule in this case.

2.      Under the independent-source doctrine, evidence seized pursuant to a search warrant may be admissible even when that evidence was previously discovered during an illegal search. *See Murray* v. *United States*, 487 U.S. 533, 536-541 (1988). When law

enforcement officers have an independent source for challenged evidence, this doctrine ensures that they are placed in no worse a position than if the unlawful conduct had not occurred.  *Id* at 537; *see Utah v. Strieff*, 579 U.S. 232, 238 (2016) ("[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source.").

In this case, FBI agents initially unlocked Schwartz's phone using his fingerprint in February 2021.  Even if that action trenched on the Fifth Amendment privilege, a different FBI agent accessed Schwartz's phone in August 2021 and forensically extracted its contents. Critically, this agent did not use Schwartz's fingerprint.  The agent instead attempted different variations of the passwords that Schwartz disclosed to agents in the voluntary custodial interview shortly after his arrest; one of those variations successfully unlocked Schwartz's phone.  As a consequence, the August 2021 warrant-authorized search of the phone constituted an independent source for the contents stored within it.  Suppression is accordingly unwarranted.

## <u>Conclusion</u>

For these reasons, the use of Schwartz's fingerprints to unlock the cell phone, as authorized by the search warrant, did not implicate his Fifth Amendment rights and does not warrant suppression of the phone's contents.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:      /s/ Jocelyn Bond
JOCELYN BOND
Assistant United States Attorneys
D.C. Bar No. 1008904
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 809-0793
Jocelyn.Bond@usdoj.gov