UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-178 (APM) |
| v. : | |
| : | |
| PETER J. SCHWARTZ, et. al., : | |
| : | |
| Defendant. : | |

### UNITED STATES' OPPOSITION TO DEFENDANTS SCHWARTZ AND BROWN'S MOTION IN LIMINE TO EXCLUDE TESTIMONY

Defendants Peter J. Schwartz and Jeffrey Brown have moved to exclude the anticipated testimony of Metropolitan Police Department ("MPD") Sergeant William Bogner. ECF Nos. 157. They argue that Sgt. Bogner's testimony "would constitute an expert opinion and not a lay opinion," and that the government has left Schwartz and Brown "with no time to find an expert witness to review the testimony of Sgt. Bogner." Brief at 3-4. Because Sergeant Bogner is a lay witness and his anticipated testimony would not implicate Rule 702, the defendants' motion should be denied.

### BACKGROUND

Metropolitan Police Department ("MPD") Sergeant William Bogner was one of hundreds of MPD officers deployed to the U.S. Capitol on January 6, 2021. Sergeant Bogner was on the Lower West Terrace of the Capitol at approximately 2:28 p.m. when the defendants participated in an assault on law enforcement, resulting in the collapse of the MPD police line and law enforcement's retreat onto the Inauguration Stage and later into the area of the Capitol known as the "tunnel." Following his retreat into the tunnel, Sergeant Bogner was on the front line of police, and his body worn camera ("BWC") captures the moment that rioters broke the glass doors standing between the crowd and law enforcement. This event was the opening salvo for the

1

prolonged, violent assault on law enforcement inside the tunnel around 3:00 p.m. Sergeant Bogner was also one of the many officers in the tunnel when the defendants deployed pepper spray against law enforcement.

Sergeant Bogner has training in MPD's use of Oleoresin Capsicum ("OC") sprays, commonly referred to as "pepper spray" and has experienced its effects, both in a training environment and in the field. Since 2016, Sergeant Bogner has participated in the training of MPD recruits in the use of OC spray and has personally witnessed OC spray deployed on recruits. Like every other MPD officer, he has been educated on the use of OC spray, the safety considerations law enforcement employs in the use of OC spray, and the warnings and potential damage that could be caused from the misuse of OC spray. Sergeant Bogner is aware of the MPD's guidelines on the use of various types of OC sprays, and the minimum distances each type of spray requires when deployed by law enforcement. He is prepared to testify that MPD officers are trained on the potential damage that OC spray can cause if deployed in an unsafe manner.

Sergeant Bogner is familiar both with the types of OC sprays possessed and used by the MPD at the Capitol on January 6. On January 6, the MPD possessed OC spray manufactured by Defense Technologies in four different sizes and potencies: MK-3, MK-4, MK-9, and MK-46. Like other MPD officers, Sergeant Bogner was familiar with what each different type of canister of OC spray looked like. The government showed Sergeant Bogner still shots of the defendants appearing to hold canisters of OC spray and was asked if he could identify them. In one photograph, Sergeant Bogner was confident that the individual on the Lower West Terrace, Peter Schwartz, was holding a canister of MK-46 OC spray. In two other photos–one of Markus Maly on the Lower West Terrace, and one of Jeffrey Brown inside the tunnel–Sergeant Bogner informed the government that those canisters did not appear to be canisters of OC spray used by MPD on

January 6. Instead, he believes the appearance of the spray used by the defendants in the tunnel was more consistent with "bear" spray, a more potent form of OC spray than what is used by the MPD. This spray was used against him in the tunnel, and he can describe the effects he felt from that particular spray and how it compared to other times OC spray has been deployed against him.

Other MPD officers will similarly testify that the canister used by Schwartz on the Lower West Terrace was consistent with the MPD canisters they brought to the Capitol that day, and the ones used by Maly on the Lower West Terrace and all three defendants in the tunnel did not appear to be MPD canisters. Other officers will also likely testify regarding their experience of having had OC spray deployed against them in both a training environment and in the field. They will further discuss the training and certification required by MPD in the use of OC sprays, as well as the warnings received during training regarding the safe distance at which to deploy OC spray.

Following the interview with Sergeant Bogner, the government sent defense counsel the email attached as Exhibit A to their motion. The government's disclosure was not intended as an expert witness disclosure. Rather, the government wished to disclose that Sergeant Bogner could not identify the canisters used by the defendants while inside the tunnel as being from MPD. Defendants Schwartz and Brown now seek to exclude Sergeant Bogner's testimony on the premise that (a) the government's email was an attempt to backdoor an expert witness notice; and (b) that Sergeant Bogner's anticipated testimony would implicate Rule 702. Neither is correct.

## ARGUMENT

Sergeant Bogner's testimony is admissible under Rules 602 and 701, not 702. First, Rule 602 allows a witness to testify when they have "personal knowledge of the matter." As noted above, Sergeant Bogner has personal knowledge of OC spray from before the Capitol attack on

January 6 *and* from the events of that day.  He can compare his past experiences of OC spray with what he experienced on January 6.

Additionally, Rule 701 permits the admission of lay opinion testimony that is "rationally based on the witness's perception," helps the factfinder to understand "the witness's testimony or to determin[e] a fact in issue," and does not depend "on scientific, technical, or other specialized knowledge within the scope of Rule 702." *United States v. Valbrun*, 877 F.3d 440, 443 (1st Cir. 2017) (internal quotation marks omitted).  The district court has "considerable discretion" in deciding whether to admit lay opinion testimony under Rule 701.  *United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012).  The rule requires exclusion only "where the witness is no better suited than the jury to make the judgment at issue," thus "providing assurance against the admission of opinions which would merely tell the jury what result to reach." *United States v. Vázquez-Rivera*, 665 F.3d 351, 363 (1st Cir. 2011) (quoting *United States v. Meises*, 645 F.3d 5, 16 (1st Cir. 2011)).

Here, Sergeant Bogner's anticipated testimony is primarily derived from his personal knowledge and perception of the events of January 6, 2021.  In deploying to the Capitol, he and his colleagues arrived with OC spray canisters.  When their line was overrun, members of the mob seized these MPD canisters and turned them on the police officers.  Sergeant Bogner's testimony about which canisters were brought to the Capitol by MPD and which ones were not is fact testimony that relies on his personal knowledge and his perception.   Every MPD officer is trained in the use of OC spray, and multiple MPD witnesses can identify which canisters used by the defendants were consistent with MPD equipment.  Sergeant Bogner's identification of these canisters is no different than an eyewitnesses' identification of a bank robber's getaway car, or a burglary victim's identification of a stolen item.  It does not involve "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701; *Valbrun*, 877 F.3d at 443.

4

Sergeant Bogner's experience in observing MPD recruits subjected to OC spray likewise does not implicate Rule 702. Sergeant Bogner has participated in that training and received the warnings that other MPD officers have been given on misuse of OC spray. Sergeant Bogner's experience seeing the effects of OC spray on others and his ability to describe its impact on him is testimony that helps explain why and how he acted on January 6, as he and other officers were being subjected to OC and other sprays throughout the day.

This is exactly the type of testimony contemplated by Rule 701. The advisory committee notes to this rule set forth examples of opinion testimony by lay witnesses that do not implicate the "scientific, technical, or other specialized knowledge" that would require expert notice and disclosures under Rule 702. Sergeant Bogner's (and likely other MPD officers') testimony is analogous to one of the examples in the advisory committee notes regarding lay witness identification of narcotics:

> Similarly, courts have permitted lay witnesses to testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established. See, e.g., *United States v. Westbrook*, 896 F.2d 330 (8th Cir. 1990) (two lay witnesses who were heavy amphetamine users were properly permitted to testify that a substance was amphetamine; but it was error to permit another witness to make such an identification where she had no experience with amphetamines). Such testimony is not based on specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's personal knowledge. If, however, that witness were to describe how a narcotic was manufactured, or to describe the intricate workings of a narcotic distribution network, then the witness would have to qualify as an expert under Rule 702.

Fed R. Evid. 701 (Committee Notes on Rules—2000 Amendment) (internal citation omitted). Here, lay witnesses will testify that canisters and sprays appear to be certain types of canisters and sprays, based on their familiarity with those items. They will not testify regarding how OC spray is manufactured or its chemical makeup, or anything more intricate beyond what is set forth above. Sergeant Bogner will not be asked to provide the jury with his opinion on the *potential* effects of

5

OC spray exposure, or a conclusion about whether OC spray is a deadly or dangerous weapon. Rather, the government intends to ask Sergeant Bogner about the OC sprays he experienced on January 6, identify the canisters at issue, describe for the jury how he has been trained to use them, and how he and others react when OC sprays are deployed against them.

His testimony is also based on his own perceptions as a witness at the Capitol on January 6 and would be helpful to the jury to determine a fact at issue, namely, *what it was* the defendants sprayed at law enforcement on January 6, and whether it was dangerous. This is permissible lay testimony. *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd*, 320 F.3d 1213, 1223 (11th Cir. 2003) ("Tampa Bay's witnesses testified based upon their particularized knowledge garnered from years of experience within the field. Their testimony was helpful to the district judge and relevant to the issues presented in the case.") (internal citations omitted). "A witness offering a lay opinion grounds his baseline in personal experiences, then uses that baseline to evaluate an event he personally observed." *Atlanta Channel v. Solomon*, 2021 WL 4243383 at *2 (D.D.C. Sept. 17, 2021); *see also McCormick on Evidence* § 11 (8th ed. 2020). Sergeant Boger's experience as a law enforcement officer informs his knowledge about OC spray, and "[a] witness's '[p]erceptions based on industry experience [are] a sufficient foundation for lay opinion testimony.'" *Id* at *3 (citing *United States v. Oldrock*, 867 F.3d 934, 940 (8th Cir. 2017); *see also United States v. Robinson*, 2017 WL 11496737 at *2 (D.D.C. July 13, 2017) ("testimony that a pharmacist took certain actions because they were concerned about Defendant's prescriptions, even if their concerns were based in part on their experience, is not an expert opinion.").

Schwartz and Brown conclude that "a lay person would not be able to render an opinion on the origin of the canister in question." Defendant's Brief at 4. This is not accurate. Sergeant Bogner, along with multiple other MPD officers, carry OC spray on a regular basis as part of their

6

equipment; they are trained in how to deploy OC spray; they are sprayed with OC spray as part of their training; and they have deployed OC spray in the course of their duties as MPD officers. This experience is sufficient to enable them to provide certain limited opinions relating to whether the OC spray canisters at issue were consistent with those issued to MPD officers and whether the substances that were sprayed on them on January 6, 2021 was consistent with their prior experience. Furthermore, the canister that Schwartz used and possessed on January 6 is distinctive: it is a large, red and black item the size of a small fire extinguisher, with a nozzle on one end and a handle extending perpendicular from the barrel. These distinctive characteristics lend themselves to identification. Below is a still shot of an MPD officer holding such a canister on the Lower West Terrace before the crowd broke the police line, along with a still shot of Schwartz holding a similar or identical canister:


Figure 1: Officer Christopher Boyle's BWC at 2:07:02 p.m.



Figure 2: Officer Christopher Boyle's BWC at 2:30:13 p.m.

MPD officers' testimony regarding these items will aid the jury in determining key issues of fact: the identity of the spray used against the officers and whether it was dangerous. Their testimony is not specialized and relies on their experiences and familiarity with OC spray, as well as their perceptions from the date and time of the offense.

## CONCLUSION

For the foregoing reasons, defendants' Schwartz and Brown's Motion to Exclude should be denied.\*

---

\* Alternatively, should the Court find that any portion of Sergeant Bogner's testimony would fall within the scope of Rule 702, it should find that defendants' have adequate time to prepare a cross-examination of Sergeant Bogner to expose any perceived flaws in his testimony.

                    Respectfully submitted,

                    MATTHEW M. GRAVES
                    United States Attorney
                    D.C. Bar Number 481052

By:   /s/ Stephen J. Rancourt
                    Stephen J. Rancourt
                    Texas Bar No. 24079181
                    Assistant United States Attorney, Detailee
                    601 D Street, NW
                    Washington, D.C. 20530
                    (806) 472-7398
                    stephen.rancourt@usdoj.gov