**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Case No. 21 CR 178 (APM)** |
| | ) | |
| **PETER SCHWARTZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES' MOTION FOR ORDER AUTHORIZING**
**RESTITUTION PAYMENT FROM INMATE TRUST ACCOUNT**

The United States, by and through counsel, the United States Attorney for the District of

Columbia, respectfully moves, pursuant to 18 U.S.C. §§ 3613(a), 3664 (k) and 3664 (n), and based

on its common law right to offset, for an order authorizing the Federal Bureau of Prisons ("BOP")

to turnover to the Clerk of this Court a reasonable portion of the funds held in the Defendant's

Inmate Trust Account, up to $2,920.  This payment is toward satisfaction of the outstanding

criminal restitution obligation in this case.  In support of this motion, the United States submits

and relies on the following memorandum of points and authorities.

**FACTUAL BACKGROUND**

On January 6, 2021, a joint session of Congress convened at approximately 1:00 p.m. at

the U.S. Capitol.  Members of the House of Representatives and the Senate were meeting in

separate chambers to certify the vote count of the Electoral College of the November 3, 2020,

Presidential election.  By approximately 1:30 p.m., the House and Senate adjourned to separate

chambers to resolve a particular objection.  As the proceedings continued, a large crowd gathered

outside the U.S. Capitol.  Temporary and permanent barricades were in place around the exterior

of the building, and U.S. Capitol Police were present and attempting to keep the crowd away from

the building and the proceedings underway inside.  At approximately 2:00 p.m., certain individuals

forced their way over the barricades and past the officers, and the crowd advanced toward the west front of the building.

The vote certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to keep the crowd from entering; however, shortly after 2:00 p.m., individuals in the crowd forced their way in, breaking windows and assaulting police officers along the way, while others in the crowd cheered them on. At approximately 2:20 p.m., members of the House of Representatives and the Senate, including the President of the Senate, Vice President Pence, were forced to evacuate the chambers. All proceedings, including the joint session, were effectively suspended. The proceedings resumed at approximately 8:00 p.m. after the building had been secured.

Defendant Peter Schwartz actively participated in the events of January 6, 2021, by aggressively attempting to overwhelm the police line on the Lower West Terrace (LWT) of the Capitol building.  Defendant threw the "first" chair at the line of officers, creating an opening in the police line in the northwest corner of the terrace that enabled hundreds of rioters to flood the LWT as overwhelmed officers were forced to retreat.  He then stole chemical munitions, including pepper spray, that had been left behind by the fleeing officers, and used that pepper spray as a weapon to attack those same officers as they tried to escape the growing and increasingly violent mob.  Defendant later made his way up to the inaugural stage and entered the tunnel, where he worked with others to again spray the line of officers with pepper spray.  His actions contributed to approximately $2,800,000 of property damage to the Capitol building.

## **PROCEDURAL BACKGROUND**

As set forth in the Judgment in this matter, a jury found Defendant guilty of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and Aiding and Abetting, in violation of 18 U.S.C. § 111(a)(1) and (b) and (2); Entering and Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); Disorderly Conduct in a Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Act of Physical Violence in a Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F).  *See* Docket Doc. No. 219.  The Court sentenced Defendant to 170 months imprisonment and ordered him to pay a special assessment of $920.00 and $2,000 in restitution, with the special assessment due immediately. *Id.* at 7-8.

By this motion, the United States seeks entry of an order authorizing the BOP to seize and send all or a reasonable portion of the Defendant's Inmate Trust Account to the Court toward satisfaction of his outstanding financial obligation.  As of this filing, Defendant has made four payments totaling $481.64, and has an outstanding assessment and restitution balance of $2,920. Counsel for the United States recently learned that, as of October 1, 2023, Defendant's available trust account balance was $1,753.43.  *See* Exhibit, BOP Account Statement.

## DISCUSSION

The United States is entitled to attach funds in Defendant's inmate account.  First, the United States has a statutory lien over the funds.  This lien, created under the Mandatory Victims Restitution Act of 1996 ("MVRA"), establishes an immediate attachment on all property and rights to property of the Defendant, including Defendant's Inmate Trust Account, in favor of the United States for the enforcement of the ordered mandatory restitution obligation.  Second, the MVRA directly mandates, pursuant to 18 U.S.C. § 3664(n), the application of the value of substantial resources received from "any source, . . . during a period of incarceration…to any restitution or fine still owed."  Third, under 18 U.S.C. § 3664(k), upon notification of a material change in the Defendant's economic circumstances, the Court "may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule or require immediate payment in full, as the interests of justice require."  Fourth, the United States' common law right to offset gives it the right to satisfy debts owed to it from money the United States is holding for the debtor.  Here, the United States essentially sits in the position of a bank whose account is held for the benefit of the Defendant.  The BOP currently has no procedure in place for administrative offset, and so the United States now invokes the judicial process and common law offset to accomplish this result. The Court has discretion to choose one of these mechanisms to effect payment of restitution from the Defendant's Inmate Trust Account.

## I.   THE GOVERNMENT HAS A STATUTORY LIEN ON THE FUNDS.

Title 18 U.S.C., § 3613 sets forth the procedures for the government to enforce criminal monetary penalties, such as restitution and criminal fines.  *See* 18 U.S.C. §§ 3613(a), 3613(f) (government enforces restitution in the same manner as a fine).  In particular, the statute provides that a sentence imposing restitution constitutes a lien in favor of the United States against all the

Defendant's property and rights to property. *See* 18 U.S.C. § 3613(c). Thus, this statutory lien created for the United States attaches to the Defendant's interest in funds held by the BOP in his inmate trust account. *See also* 18 U.S.C. §§ 3613(a) (government enforces restitution against all property and rights to property of the defendant); 18 U.S.C. § 3664(m) (government may use all available and reasonable means to collect restitution). In addition, under the Crime Victim Rights Act, the victims of the Defendant's crime are entitled to full and timely restitution as provided by law. 18 U.S.C. § 3771(a)(6). Accordingly, the lien is in favor of the United States on all property and rights of property and impacts the Defendant's Inmate Trust Account such that the government may acquire that property as part of its authority to enforce the judgment lien by all available and reasonable means. 18 U.S.C. § 3664(m)(1)(A)(i). The funds at issue currently are in the government's possession, and the government has a valid lien on this inmate trust account. Thus, these funds are subject to a turnover order.

The government also submits that an order authorizing the turnover of the Defendant's property is appropriate here, and the government is not required to rely upon other formal collection remedies such as garnishment of, or execution upon, property to obtain these funds. The funds at issue currently are in the government's possession, and the government has a valid statutory lien on this inmate trust account. *See United States v. Rand*, 924 F.3d 140, 143 (5th Cir. 2019) (Restitution operates as "a lien in favor of the United States.") (quoting 18 U.S.C. § 3613(c)).

Furthermore, because the property is cash, it does not fall within any applicable categories of the exempt property that a defendant may claim in a criminal case. *See* 18 U.S.C. § 3613(a)(1) (setting forth the applicable IRS property exemptions for criminal cases). For criminal debts such as restitution, federal law provides that the only categories of exempt property are: (1) wearing

apparel and school books; (2) fuel, provisions, furniture, and personal effects; (3) books and tools

of a trade, business, or profession; (4) unemployment benefits; (5) undelivered mail; (6) annuity

or pension payments under certain, specified federal statutes; (7) workmen's compensation; (8)

judgments for support of minor children; (9) certain service-connected disability payments; and

(10) assistance under the Job Training Partnership Act.  *See* 18 U.S.C. § 3613(a)(1).  Accordingly,

Defendant cannot properly claim that the funds held in his Inmate Trust Account are exempt from

payment of restitution.

## II.    THE FUNDS ARE RECOVERABLE PURSUANT TO THE MVRA 18 U.S.C. § 3664(n)

Furthermore, under the MVRA, specifically 18 U.S.C. § 3663A, *et seq*., which applies here,

the Defendant's resources received from any source during his term of incarceration must be

applied to his outstanding restitution obligation.  Specifically, 18 U.S.C. § 3664, which sets forth

the procedures for the imposition and enforcement of restitution, provides:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources *from any source*, including inheritance, settlement, or other judgment, during a period of incarceration, such person **shall be required** to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(n) (emphasis added).  *See United States v. Lemberger*, 673 F. App'x 579, 580

(7th Cir. 2017) (during incarceration "any existing assets should be seized promptly" to satisfy

criminal monetary obligations) (quoting *United States v. Sawyer*, 521 F.3d 792, 795 (7th Cir.

2008)).  *See also Rand*, 924 F.3d 140 at 142 (5th Cir. 2019) ("[C]riminal debtors retain their

obligation throughout their prison term and must not only inform the court and attorney general

of any material change affecting their ability to pay but also 'apply the value of [substantial]

resources to any restitution or fine still owed,' even if the resources were acquired while in

custody." (citing § 3664(k),(n)); *United States v. Cunningham,* 866 F. Supp. 2d 1050, 1061-62

(S.D. Iowa 2012) (entire amount of defendant's disability retirement payments could be garnished during defendant's incarceration as necessary and appropriate to effectuate § 3664(n) and the restitution order).[1]

This Court ordered Defendant to pay the full amount of his $920 special assessment immediately; however, Defendant has made only four payments totaling $481.64, and has an outstanding assessment and restitution balance of $2,920.  *See* 18 U.S.C. § 3572(i) (entire amount due after 30 days delinquency and notice).  Defendant's inmate trust account has burgeoned to a balance of $1,753.43, all of which comes from a series of Western Union deposits rather than prison wages.  *See* Exhibit, BOP Account Statement.  Federal law mandates the application of these funds in partial payment of the Defendant's outstanding restitution obligation.  18 U.S.C. § 3664(n); s*ee United States v. Rand*, 924 F.3d at 142; *Lemberger*, 673 F. App'x at 580.[2]  Choice

---

[1]  Other courts have interpreted the MVRA (Section 3664(n) to require the acquisition of funds received by a prisoner in an inmate trust account to satisfy his outstanding criminal monetary obligations.  *See United States v. Brewer*, No. 96-cr-294, 2016 WL 6652996, at *4 (N.D. Tex. Oct. 21, 2016), report and recommendation adopted, No. 96-cr-294, 2016 WL 6650948 (N.D. Tex. Nov. 10, 2016) (Defendant's receipt of the $4,000 inheritance while incarcerated, and his failure to offer a valid reason why the request for a turnover order should be denied, the Court should grant the government's motion under § 3664(n) and issue an order directing the BOP to turn over to the Clerk of the Court all funds, except $200, in defendant's inmate trust account as payment toward the criminal monetary penalties imposed in this case.); *United States v. Hester*, No. 10-cr-2967, 2016 WL 1007335 at *3 (S.D. Cal. Mar. 14, 2016) (Where defendant obligated to pay restitution, § 3664(n) applied because of recent deposits to his inmate trust account.  Windfall was also a material change in economic circumstances, permitting use of § 3664(k)); *United States v. Smalls*, No. 16-cr-75, 2016 WL 6582473, at *1 (W.D.N.C. Nov. 4, 2016) (§ 3664(n) permitted BOP turnover of part of bank robbery defendant's substantial inmate trust account.); *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019) (Section 3664(n) "refers to windfalls or sudden financial injections . . . that become 'suddenly available'" to the defendant.).

[2]  To the extent that the Defendant is also participating in the Inmate Financial Responsibility Program (IFRP), this is no impediment to the government's resort to § 3664(n)'s provision.  As noted by the court in *Lemberger*, the government remains free to use "all other available and reasonable means" in collecting restitution. 673 F. App'x at 580 (citing 18 U.S.C. § 3664(m)(1)(A)(ii)).

of this statutory mechanism appears most apt because the Defendant's unique circumstances of being imprisoned while in receipt of substantial resources most closely fit the requirements of this provision.  This can be accomplished without any adjustment of the restitution order to provide for the lump sum payment the government requests.

## III.   THE FUNDS ARE ALSO SUBJECT TO TURNOVER PURSUANT TO THE MVRA, 18 USC § 3664(k)

The Defendant has not notified this Court of his substantial resources, as required by 18 U.S.C. § 3664(k).  Section 3664(k) requires that the Defendant notify the Court and the United States Attorney's Office of any material change in his "economic circumstances" affecting his ability to pay restitution.  18 U.S.C. § 3664 (k).  "Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id. See also*, *United States v. Locke*, No. 09-cr-259, 2012 WL 1154084, at *1-2 (D.D.C. April 9, 2012) (general discussion of § 3664(k) as applied to inmate account.)  Defendant's receipt of substantial funds from Western Union deposits certainly constitutes a material change in his "economic circumstances" that affects his ability to pay restitution under § 3664(k), warranting a court order for full payment of his inmate trust account balance.  These recent monetary deposits to the Defendant's Inmate Trust Account, originating from Western Union are not the gradual accumulation of prison wages, but rather constitute a material change in the defendant's economic circumstances.  *See* Exhibit, BOP Account Statement.

Upon a material change in economic circumstances, the Court's use of § 3664 (k) as a basis for ordering turnover of the portion of the Defendant's inmate account needed to satisfy his criminal monetary penalties is a recognized approach.  *See United States v. Grant*, 235 F.3d 95, 101 (2d Cir. 2000) (Release of defendant's previously frozen funds by New York prison authorities

upon conclusion of the federal prosecution constituted a "material change in the defendant's economic circumstances ….")  *See also United States v. Grigsby*, No. 12-10174, 2016 WL 1056560, at *5 (D. Kan. Mar. 16, 2016), *aff'd*, 665 F. App'x 701 (10th Cir. 2016), *cert. denied*, No. 16-8977, 2017 WL 1740928 (U.S. Jun. 5, 2017) (Defendant's economic circumstances changed with government revelation of his substantial pension, given that at sentencing, he had no declared assets and no monthly income.  "In the interests of justice, the government is entitled to an order for immediate payment in full."); *Hester*, *2016 WL 1007335* at *3 (recent deposits to inmate trust account averaging approximately $940 a month represented a material change in economic circumstances, permitting use of § 3664(k) as a basis for increasing scheduled monthly payment).

As explained by the court in *Grigsby*,

> For purposes of § 3664(k), a change in a defendant's economic circumstances is **material if it substantially affects "his ability to pay restitution."**  *United States v. Grigsby*, 579 F. App'x 680, 684 (10th Cir. 2014) (citing *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003)).  Materiality is determined by **"an objective comparison of defendant's financial condition before and after a sentence is imposed."**  *United States v. Dye*, 48 Fed. Appx. 218, 220, 2002 WL 31245976 (8th Cir. 2002). "Discovery of previously unknown or hidden assets [may] constitute a change in the defendant's economic circumstances that could justify modification under section 3664(k), as it would be a change in the economic circumstances presented to the court at sentencing."  *United States v. Roush*, 452 F. Supp. 2d 676, 681 n. 6 (N.D. Tex. 2006).  [*Cf.*] *United States v. Foreman-Pottinger*, 2009 WL 3347116, *3 n. 1 (E.D. La. Oct. 14, 2009) (no modification under § 3664(k) where "the Government knew all of Foreman-Pottinger's assets during sentencing and has not discovered any previously unknown or hidden assets").

*Grigsby*, 2016 WL 1056560, at *4 (footnote omitted, emphasis added).  With a balance of $1,753.43 in his inmate trust account, Defendant now has the ability to pay a significant portion of his financial obligation imposed by this Court.  This is undeniably a material change in economic circumstances.  Had Defendant complied with the Court's order in this case, he would

have paid nearly all of his financial obligation in this case.  The Court thus should order turnover

of a reasonable portion of the Defendant's assets in partial satisfaction of his restitution obligation.[3]

## IV.    COMMON LAW OFFSET

The United States Supreme Court has held that the United States can exercise what is

referred to as a common law offset in the same way as any other creditor.  "The government has

the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor,

in his hands, in extinguishment of the debts due to him.'"  *United States v. Munsey Trust Co.*, 332

U.S. 234, 239 (1947); *see also United States use of P.J. Keating Co. v. Warren Corp.*, 805 F.2d

449, 552 (1st Cir. 1986) (The Government's right to set off funds is well established (*Munsey* and

other cases).  As explained in *Amoco Prod. Co. v. Fry*, 118 F.3d 812 (D.C. Cir. 1997),

> [C]ommon law right of offset or setoff … "allows entities that owe each other
> money to apply their mutual debts against each other, thereby avoiding 'the
> absurdity of making A pay B when B owes A.' "  *Citizens Bank of Md. v. Strumpf*,
> [516 U.S. 16, ——, 116 S.Ct. 286, 289] (1995) (quoting *Studley v. Boylston Nat'l
> Bank*, [229 U.S. 523, 528] (1913)).  Like private creditors, the federal government
> has long possessed the right of offset at common law.  *See, e.g., United States v.
> Munsey Trust Co.*, [332 U.S. 234, 239] (1947); *Gratiot v. United States*, [40 U.S.
> 336, 370] (1841).  In order for the right of offset to arise, there simply must be
> mutuality of parties and maturity of the debt.

---

[3]  Courts in this jurisdiction, generally, have favored such motions for turnover of inmate
funds to pay restitution.  *See United States v. Parker*, No. 16-cr-119-01 (D.D.C. Nov. 17, 2017)
(Docket Doc. No. 24) (Court authorizes payment of restitution from Defendant's Inmate Trust
Account pursuant to § 3664(k) & (n)); *United States v. Rattler*, Nos. 02-cr-466, 13-cr-234 (D.D.C.
Dec. 5, 2017) (Docket Doc. No. 59) (Court authorizes payment of restitution from Defendant's
Inmate Trust Account, stemming from an inheritance he received, pursuant to § 3664(k) and did
not reach alternative arguments under § 3664(n) or pursuant to a request for common law offset);
*United States v. Armstrong*, No. 09-cr-135, 2020 U.S. Dist. LEXIS 5160 at 19-21 (D.D.C. Jan. 13,
2020) (Court ultimately granted the government's Motion for Order Authorizing Restitution
Payment from Inmate Trust Account pursuant to § 3664(k) and required a lump sum payment of
$4,000 to satisfy part of outstanding restitution obligation; but, rejected the other statutory grounds
argued in support of the government's motion).

*Fry*, 118 F.3d at 817.  Both elements are present in this case.  Defendant owes his victim restitution, and the United States owes Defendant money from his Inmate Trust Account.  The most expedient approach would allow the United States to credit the Defendant for his restitution payment, which the United States could remove from his inmate account.  *See Sentry Ins. A Mut. Co. v. United States*, 12 Cl. Ct. 320, 322 (1987) (where United States possessed contract proceeds, holding both a debit and a credit for subcontractors on a construction project, court permitted it to exercise common law right of offset over subrogation of one of the subcontractors' contracts).  The United States submits that the Court should alternatively authorize this offset here, as it would not violate any of the terms of the Defendant's restitution order and would permit BOP to seize monies from the Defendant's Inmate Trust Account to pay his restitution obligation.

\*      \*      \*

**<u>CONCLUSION</u>**

WHEREFORE, the foregoing considered, the United States submits that its Motion for Order Authorizing Restitution Payment from Inmate Trust Account should be granted.

A proposed order consistent with this motion is attached.

Dated:  October 12, 2023
Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:  _____/s/ *Melissa E. Goforth Koenig*_____
MELISSA GOFORTH KOENIG
Assistant United States Attorney
601 D Street, NW (Civil Division)
Washington, D.C.  20530
(202) 252-2552
melissa.goforth.koenig@usdoj.gov

*Attorneys for the United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, on this 12th day of October, 2023, that copies of the foregoing

Government's Motion for Order Authorizing Restitution Payment from Inmate Trust Account,

Exhibit, and proposed order have been sent by the Court's Electronic Case Filing system (ECF),

to the extent any recipient has access, and by U.S. Mail to:

Inmate Peter Schwartz, Reg. No. 28815-509
USP Canaan
U.S. Penitentiary
P.O. Box 300
Waymart, PA 18472

*Defendant*

                                             /s/
                                       MELISSA E. GOFORTH KOENIG
                                       Assistant United States Attorney